# Weber's Appeal.

A testator died leaving nine children, and four grandchildren, the children of a son who was dead when the will was made; one other son died after the making of the will, but in the lifetime of the testator, and without issue:

He provided in his will that a certain portion of his real estate should be sold by his executors at public vendue, including *certain lots:* He further devised as follows: Each of my children, (except Jonas and Solomon) and each of the four children of my deceased son Joseph, shall, however, have one of the said lots. These lots I give to my children and grandchildren, without their having anything to pay for them, or that there shall be anything charged for the same. He devised to his son *Jonas* and his heirs, a piece of land for which he was to pay $80 per acre; viz., $4000 *he takes away first, for a part of his inheritance from me;* the balance he has to pay in twelve equal instalments without interest, the first one year after my decease, and so on yearly one instalment, until all is paid.

He also devised to his son *Solomon* and his heirs, a tavern-house and piece of land, "for the sum of $6500;" Four thousand dollars thereof he shall receive *on account upon inheritance from me;* to wit, as a part of his inheritance; the balance, $2500, he shall pay in ten equal yearly payments without interest, the first one year after my decease.

He further provided that "all my estate shall be divided among my eleven children, in eleven equal shares, the children of my son Joseph shall receive one share."

The estate was worth above $52,000: It was *held*, that the $4000, which was devised to Jonas and Solomon, and which they were each authorized to retain out of the price of the land devised to them, was to be computed as a part of their share of the estate of the testator, and that they were not to be allowed to retain that amount in addition to an equal share of the estate with the other children, and the heirs of the one deceased.

THIS was an appeal by John Weber, from the decree of the Orphans' Court of *Lehigh county*, making distribution of the estate of Frederick Biery, deceased.

Frederick Biery, of Hanover township, Lehigh county, made his will, dated 29th December, A. D. 1839, which, in part, was as follows:—

[Weber's Appeal.]

"It is my will that my executors shall sell at public vendue, my mill, with the store-house, the dwelling thereto belonging, the land belonging to the same, and all water-courses and rights belonging to the mill, at such time, and upon such terms and conditions, as they may think proper for the best of my estate. Yet all those in any way entitled to the use of water out of the creek, the spring or dam, shall not be prejudiced. ·

"And as I have a contract with the Lehigh Coal and Navigation Company to take water out of the canal above the lock, for the use of said mill, therefore so much ground or land as may be necessary for a race to lead the water to the mill is to be sold with it, and is hereby appropriated.

"Further, it is my will that the lowland from the said lock to the hickory tree, be also sold at public vendue, as also all lots on the furnace street.

"Each of my children (except Jonas and Solomon), and each of the four children of my deceased son Joseph, shall, however, have one of the said lots. These said lots I give to my children and grandchildren, without their having anything to pay for them, or that there shall be anything charged them for the same. They shall choose their lots according to their ages, but those lots which are most profitable, or shall bring the best price, shall not be chosen by my said children or grandchildren, but be sold.

"I give and devise to my son Jonas and to his heirs and assigns, my plantation and piece of land with all that is appurtenant thereto, for which he shall pay eighty dollars for each and every acre the same contains, on the following terms: *Four thousand dollars he takes away first, for a part of his inheritance from me,* the balance he has to pay in twelve equal instalments without interest; the first instalment one year after my decease, and so on yearly one instalment until all is paid.

"I give and devise to my son Solomon, and to his heirs and assigns, my tavern-house and piece of land, from the Furnace street in a line towards the Lehigh, and then above the said hickory tree, with all the appurtenances, for the sum of six thousand five hundred dollars. *Four thousand dollars thereof he shall receive on account upon inheritance from me, to wit, as a part of his inheritance,* the balance, $2500, he shall pay in ten equal yearly payments without interest, the first one year after my decease.

"*All my estate shall be divided among my eleven children, in eleven equal shares; the children of my said son Joseph shall receive one share.*

"All that which shall be sold for cash, or what shall consist of cash, shall be immediately divided, but always in the manner as is or shall be directed by my will; but that part of my estate not cash, shall be distributed yearly as it becomes due among my

children according to their ages, in such manner that two of them draw every year."

The testator died August 31, 1846. His will was proved Sept. 3, 1846. He had eleven children, two of whom died before he died; one of them, Joseph, was dead when the will was made, but left four children; and another, Paul, died after the making of the will, but in the lifetime of the testator, and without lawful issue.

The executors of the will of the testator filed an account, in which they charged themselves with the amount of inventory, $17,326.05; with other moneys not included in the inventory, and with rents; and further with proceeds of real estate sold, exceeding somewhat $4400; in all amounting to $24,358.85. The credits asked amounted to $7,919.82, leaving a balance of $16,439.03 for distribution.

Auditors were appointed, who reported, *inter alia,* "According to the provisions of the will (as construed by the auditors), two of the sons of the deceased, to wit, Jonas and Solomon, have each received $4000 legacy in real estate, and would not therefore be entitled to receive any further dividend until each of the other heirs shall have received a like dividend of $4000.

"It also appears that one of the sons of the deceased, referred to in his will, to wit, Paul, has since died without issue; the auditors have therefore divided the balance in eight equal shares, agreeably to the above distribution: all which is respectfully submitted."

Feb. 4, 1848, the report was confirmed *nisi.*

On the same day, exceptions were filed by counsel *for Jonas and Solomon Biery.*

1. This being a case of testacy, the Orphans' Court, or auditors appointed by them, had no authority to make or decree distribution of the balance in the hands of the accountants.

2. That the auditors erred in their construction of the will of the deceased, in charging two of the sons of the deceased, to wit, Jonas and Solomon, with $4000 each, and excluding them from an equal dividend of the balance in the accountant's hands.

On the same day *John Weber,* one of the heirs, filed exceptions, the *second* of which was:—The auditors erred in not taking in the Dr. side of the account the $4000 received by Jonas in his land, as part of his inheritance, and $4000 received by Solomon in his tavern stand, as part of his inheritance, so that the same might have been brought into the estate, and in not giving the credit accordingly.

June 21, 1849, the second exception on the part of Jonas Biery and Solomon Biery, was sustained. The exceptions taken by John Weber were dismissed, and the clerk of the Orphans' Court was directed to restate the distribution according to the opinion of the court.

[Weber's Appeal.]

In the opinion of the court, it was stated that the estate amounted to *some twenty-four thousand dollars;* an equal distribution of that among his eleven children, would have given to each of them about two thousand two hundred dollars, a sum greatly less than that which he expressly gives to Jonas "as a part of his inheritance from him," and to Solomon "on account of inheritance from him." Here then the testator must clearly be taken to have intended inequality, at least to this extent. The opinion was intimated that the expression "all my estate," was used in a sense restricted by the after part of the sentence, to "all that sells for cash or consists in cash, and to all that part of his estate which shall not be in cash, but which shall be divided annually as it becomes payable, among his children according to seniority, so that every year two of them shall draw."

With regard to Weber's second exception, it was said not to be necessary to bring the sums of $4000, bequeathed to Jonas and Solomon, into the account; that they never came into the hands of the executors, and never were designed to come there; they were to be retained by the legatees. The exception was dismissed.

On the report by the clerk, the distribution was confirmed absolutely.

John Weber appealed, and exceptions were filed to the decree, because Jonas and Soloman Biery were allowed each to retain $4000, and also to receive an equal share of the amount for distribution; in not decreeing that the $8000 should be brought into the account; but if the $8000 and the balance of the account were not to be distributed equally among the ten heirs, then the report of the auditors should have been confirmed, and Jonas and Solomon excluded from any share of the balance of the estate, until each of the other heirs shall have received the sum of $4000.

A rule was granted by the Supreme Court to take depositions. The examiner certified, that it was admitted before him by the appellees, that the value of the real and personal estate of Frederick Biery, deceased, at the time of his death, including bonds and notes not due at that time, and also an advancement to John Weber of $1000, but excluding the $8000 given by the will to Solomon and Jonas, and deducting debts, was about $44,000; which, rents and interest received and debts collected since the report of the auditors, will, after deducting certain items, increase the amount to about $44,618.53. The $8000 being added, the amount would exceed $52,000.

The case was argued by *A. E. Brown*, with whom was *C. M. Runk*, for appellant.

*J. M. Porter*, for Jonas and Solomon Biery.

[Weber's Appeal.]

The opinion of the court was delivered March 22, by

BLACK, C. J.—Frederick Biery had, at the time of making his will, ten living children and four grandchildren, the representatives of a deceased son. Soon after the making of his will one of the ten children died, unmarried and intestate. He left property consisting of a mill, a tavern stand, farms, town lots, and personal goods, amounting in all to about fifty-four thousand dollars. By his will he devised to his son Jonas a plantation, and required him to pay eighty dollars per acre for it. He then prescribed the terms of payment thus : "Four thousand dollars he takes away first as a part of his inheritance from me, the balance he has to pay in twelve equal annual instalments without interest, the first instalment one year after my decease, and so on yearly one instalment until all is paid." He devised a tavern stand and piece of land to his son Solomon, fixes the price at $6500, and adds: "Four thousand dollars he shall receive on account upon inheritance from me, to wit, as a part of his inheritance from me; the balance, $2500, he shall pay in ten equal yearly payments without interest, the first one year after my decease." In the sentence which immediately follows these devises, he says : "*All my estate* shall be divided among my eleven children *in eleven equal shares*, the children of my said son Joseph shall receive one share."

In the distribution of the testator's property under the will, the question arises, whether the sums which Jonas and Solomon are authorized to retain out of the price of the land, shall be counted against them as a part of their equal shares ; or, whether the residue of the estate is to be divided among the eleven, without reference to the $8000 given to these two sons. Did the testator intend to give Jonas and Solomon $4000 apiece more .than the other children, or only to provide that they might receive so much of their equal share in that way ? We are of opinion that the latter is the true construction of the will.

The contrary opinion of the Orphans' Court was based principally upon the supposed fact, that the whole value of the estate, real and personal, including the $8000, was only a little upwards of $24,000. The share of each child would therefore be much less than $4000. Jonas and Solomon are to retain the $4000 each, as part of their share, and how could it be part of a share, when it is more than the whole ? This view of the subject is a striking one, and would have had much influence upon us, if the fact, on which the argument rests, had been admitted. But it has been denied and disproved. The evidence taken by our examiner since the case came here, shows the whole estate to be worth about $54,000. One share is therefore more than $4000, and it was no departure from even mathematical accuracy of language, to speak of that sum as part of a share.

It is somewhat strange that the $8000 should be put on

the lands as part of their price, if it was meant that no notice or account should ever be taken of it. He gives a plantation to one, "*for which he shall pay* eighty dollars for each and every acre it contains." To the other he gives a tavern stand, "for the sum of six thousand five hundred dollars." This language would be altogether unmeaning, unless the testator intended that the prices thus fixed should be accounted for on the division of the estate with the other heirs. Why did he require payment of a sum which he was disposing of as a gracious gift?

In another part of the will, he devises to each of his children, except Jonas and Solomon, and to each of his four grandchildren, a lot on Furnace street. That paragraph shows that he understood very well what was necessary to prevent the value of land devised from being counted against the devisee and taken out of his share; for there he not only puts no price on the lots, but adds:—"These said lots I give to my children and grandchildren, without their having anything to pay for them, or that there shall be anything charged them for the same."

If the testator desired that only *part* of his estate should be equally distributed among his eleven children, he used the most unfortunate phrase that could be found in any language when he said *all* his estate should be so divided. It is so obviously the wrong way of expressing the thought, that we can hardly believe he would not have seen the error.

There are many wills (and this is one of them) where it is impossible to say with absolute certainty what the purpose or desire of the testator was; and some are so very obscure that it would be a relief to find the ground even for a conjecture. In such cases we can do no better than balance the arguments on either hand, and decide according to what seems their preponderating weight. We have done so here; and we think the reasons in favor of the construction which the Orphans' Court refused to give, greatly outweigh all that can be said on the other side. But if the scale hung perfectly even, there is a rule of interpretation which would settle the case in favor of the appellant. He asks for equality in the distribution, and unless there is a strong reason to the contrary, he ought to have it. The appellees demand $4000 each more than the other children, who are presumed to be as meritorious as they. It takes an intelligible will, if not a plain one, to disinherit, either in whole or in part, those who by law are entitled to the succession. Every man has an undoubted right to give his property to whom he pleases; but where the usual, natural, just, and legal course of distribution is to be changed, it must be done by words at least tolerably free from ambiguity.

Decree of the Orphans' Court reversed, and distribution ordered to be made according to the report of the auditors.