## Urich's Estate

*Homer L. Kreider*, for petitioner; *George V. Hoover*, for respondents.

Fox, J., July 3, 1934.—This matter comes before us upon a petition for a declaratory judgment under the Act of June 18, 1923, P. L. 840, to construe the last will and testament of Jacob Urich, Sr., deceased.

The will provides as follows:

"LAST WILL AND TESTAMENT OF JACOB URICH, SR.

the

January 3 1926

Harrisburg, Pa.

I Jacob Urich of the city of Harrisburg in the county of Dauphin and state of Pennsylvania do make my Will and Testament in manner and form following

First I direct that my body be decently intered in the East Harrisburg Ceme-

tery in Burial lot provided and that my funeral be conducted the same as my wife

Second I bequeath to my children as follows

Emma J. Hoover

Mary C. Shoop

Minie V. Farling

Anna M. Smith

Sarah M. Maun—Received 100 hundred Feb 7 1930

Maggie Defibaugh

Clara F. Miller

Samuel T. Urich

Edward L. Urich

Jacob M. Urich

Third Jacob M. Urich is to have everything that is in the main stable and ware house every thing in their is his

Fourth Every thing is to be settled as soon as it can be done and as soon as Clara can get out without forcing her out

Fith Sarah Maun is to have the Black Clock

Marth Yeager to have the cook cook clock

S T Urich is to have the Rocker the men brought me

J. M. Urich is to have my gold watch and chain

Urich is to have my open face watch

Clara F. Miller is to have the chinacloset just as it stands with dishes and and all that is in it

Mary C. Shoop is to have all the Pictures in the front room up stairs

the furniture is to be sold to the hiest bidder

Seventh I hereby give the right to buiry any of our familys on our lotts in the East Harrisburg Cemetary in the spaces onoccupied by J Urich Sr

Eith I hereby appoint Jacob M Urich as my Executor to setlle up my estate as soon as convenient

JACOB URICH SR

the

sined January 3 1926

Ninth Ida E. Yeager must have a market such as you dare set up to cost not less then 75 or 100 Dollars if not already set up to be taken of the tile the executor must sent to that

Tenth the ballance of my estate I give to Jacob M Urich for settling up my estate and defraying my expenses and taking care of our Cemetary lotts while he lives

JACOB URICH SR"

The decedent died on August 8, 1933; letters testamentary were granted to his son Jacob M. Urich; an inventory and appraisement was filed showing an estate of approximately $5,419.15; no account has been filed. The said executor, Jacob M. Urich, died on January 25, 1934, and letters of administration d. b. n. c. t. a. have been issued to Penbrook Trust Company. It was stated at the argument of the case that there were a few small debts of the decedent at the time of his death.

A well-settled rule in the construction of a will of doubtful meaning is that every fair intendment is made in favor of the heir at law and the heir at law "can only be disinherited by express devise or necessary implication; and that implication has been defined to be such a strong probability, that an intention to the contrary cannot be supposed": Bender v. Dietrick, 7 W. & S. 284, 287.

In Hunt's Estate, 133 Pa. 260, 264, it is said: "A codicil should not be held

to interfere with any of the specific provisions of a will, unless its language naturally and obviously produce such result, or the terms of the codicil expressly recognize the alteration; or, to disturb the dispositions of the will further than is absolutely necessary for the purpose of giving effect to the codicil: Reichard's Appeal, 116 Pa. 232."

That the intent of the testator must govern, and that the intent is to be gathered from the whole will, is also so well established that authorities for it are unnecessary.

In cases of doubtful construction, the law leans in favor of a distribution as nearly conformed to the general rules of inheritance as possible: Smith's Appeal, 23 Pa. 9. Whoever claims against the laws of descent must show a written title which we can with satisfaction decide to be sufficient: Lipman's Appeal, 30 Pa. 180; Grim's Appeal, 89 Pa. 333.

Said Black, C. J., in Weber's Appeal, 17 Pa. 474, 479:

"There are many wills (and this is one of them) where it is impossible to say with absolute certainty what the purpose or desire of the testator was; and some are so very obscure that it would be a relief to find the ground even for a conjecture. In such cases we can do no better than balance the arguments on either hand, and decide according to what seems their preponderating weight. . . . It takes an intelligible will, if not a plain one, to disinherit, either in whole or in part, those who by law are entitled to the succession. Every man has an undoubted right to give his property to whom he pleases; but where the usual, natural, just, and legal course of distribution is to be changed, it must be done by words at least tolerably free from ambiguity."

In Abel v. Abel, 201 Pa. 543, the syllabus reads:

"Nothing less than express devise or necessary implication will exclude an heir. Where the meaning of a devise is uncertain the law will adhere as closely as possible to the general rules of inheritance and whosoever claims against the law of descent must show a satisfactory written title."

This has been the law in this State for many years and has never been disturbed, and it so remains today.

In the second item of the will, the testator bequeathed to all his children share and share alike, except the daughter, Sarah Maun, who is charged with an advance of $100, but did not express what he bequeathed, and in the subsequent items bequests were made of small minor articles of personal property of little value to some of the children, but not to each and every one; also the right of burial to the families of the children in the burial lot of the testator. There was no disposition made of any residue of the estate, and the son Jacob M. Urich was nominated as executor.

We are of the opinion that by the will, not including the codicil or addition to the will later made, the testator meant that after the payment of his debts, funeral expenses, and the cost of settlement of his estate and delivery of said minor bequests, the residue of his estate was to be equally divided to and amongst his children with the exception of Sarah Maun, who was to receive $100 less than each of the other children.

This will was made on January 3, 1926, and later an addition or codicil was attached, adding items 9 and 10 to the will; item 9 providing for the purchase of a marker for one Ida Yeager and item 10 providing as follows: "Tenth the ballance of my estate I give to Jacob M. Urich for settling up my estate and defraying my expenses and taking care of our Cemetary lotts while he lives".

Manifestly the will was drawn by the testator himself, and likewise the addi-

tion or codicil; neither is witnessed, and the latter bears no date; both have been probated.

The children of the decedent, by the second item of the will, were the first objects of his bounty. He specified no sums or amounts that were bequeathed to them, but it is clear that he did not intend to disinherit them, otherwise he would not have named them as appears in the second item, and would have originally disposed of the estate differently. It is obvious he thought he was disposing of his estate by his children sharing equally, excepting the daughter, Mrs. Maun.

Applying the rule as above set forth and balancing the arguments on either hand, we find the predominating weight is in favor of the inclusion of all the children in the distribution of testator's estate, except the specific bequests above referred to. This follows the "usual, natural, just, and legal course of distribution." And it is not changed in this will by words which are "at least tolerably free from ambiguity".

By the will, we are of the opinion that the testator meant that all of the children should share alike in the final distribution of his estate, except that in the case of Sarah Maun the $100 advanced to her should be deducted from her share, after the delivery of the specific bequests, payment of the debts, purchase of a marker for Ida Yeager, and the costs of administration, and of the care of the cemetery lots of the estate.

By the tenth item, contained in the codicil or addition, the testator provides that "the ballance of my estate I give to Jacob M. Urich for settling up my estate and defraying my expenses and taking care of the cemetary lotts while he lives." The said Jacob M. Urich, in addition to settling the estate and defraying expenses, was to take care of the cemetery lots so long as he lived. He did not complete the settlement of the estate, so that, even if the will were construed to vest the estate upon complying with the condition, Jacob M. Urich has not complied with it so as to entitle him to the balance of the estate. We think it would be unconscionable to construe the word "balance" to mean all the estate remaining after the delivery of the specific bequests, payment of the debts, which were few and small, funeral, and other necessary expenses provided for by the will and the law, which would result in said son Jacob receiving some thousands of dollars to the exclusion of all the other children, for settling up the estate and defraying expenses which are not defined, and for the care of the cemetery lots during the life of Jacob M. Urich, little of which he has done. We are of the opinion that the testator meant that, out of the balance of the estate, such reasonable charges and expenses should be allowed the son Jacob, the executor, for the said matters to be cared for and done, otherwise item 2 of the will would be meaningless, and if the testator meant to exclude all the other children from inheritance he would have said so or would not have inserted item 2. It should appear "tolerably free from ambiguity." It does not.

And now, July 3, 1934, upon due consideration, it is hereby ordered, adjudged, and decreed that the testator, under the second item of his will, intended that after the delivery of the specific legacies, the payment of his debts, funeral expenses, purchase of a marker for Ida Yeager, and the costs of administration of the estate, all his children should share equally in the residue of his estate except Sarah Maun, who should receive $100 less than the others.