Leopold Estate.

Argued March 25, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused May 7, 1947.

*Ralph B. Umsted,* Deputy Attorney General, with him *Everett S. C. Sorber,* Special Deputy Attorney General and *T. McKeen Chidsey,* Attorney General, for appellant.

*Emanuel S. Leopold* and *Morton Meyers,* with them *Fred B. Trescher, R. E. Best, James Gregg, Smith, Best & Horn, Graham, Yost, Meyers & Graham, Kunkle, Trescher & Snyder* and *Portser, Gregg & McConnell,* for appellee.

OPINION BY MR. JUSTICE DREW, April 14, 1947:

This is an appeal by the Commonwealth of Pennsylvania from the final decree entered by the Orphans' Court of Westmoreland County in the Estate of Max Leopold, Deceased, awarding the balance for distribution in the hands of the executors to the relatives of the deceased wife of decedent.

Max Leopold, a widower, died on January 2, 1934, leaving to survive him as his only heir his daughter, Naomi. By his will, dated December 22, 1933, he provided, inter alia, as follows: "I . . . do hereby bequeath to my daughter Naomi all the residue of my estate, after all my just debts are paid, proper monuments erected to myself and deceased wife and other provisions herein after made are executed. This estate to be held in trust by executors hereinafter named . . . As guardian to my child Naoma, I hereby appoint Dr. O. B. Snyder, with instructions that he, with the executors, maintain a modest but comfortable home for her, with a suitable attendant to be chosen by the guardian. The residue of my estate, after the death of my daughter Naoma, shall be divided among *my legal heirs* as their interest may appear." (Italics added). The daughter died intestate, unmarried and without issue on April 29, 1945, and thereafter the executors of her father's estate filed their final account. At the audit, claims to the fund for distribution were made by the administratrix of the estate of the daughter on the theory that she had been given a fee simple estate or that she, through her personal representative, was entitled to the residue as the legal heir of her father; by the heirs at law of the deceased wife on the theory that they were intended by testator and described in his will as his "legal heirs"; and by the Commonwealth on the theory that, the daughter dead, there are no known legal heirs ascertainable at this time and the residue of testator's estate therefore was payable for safe keeping to the State Treasurer through the Secretary of Revenue without escheat until the rightful claimants present themselves and establish their right to payment.

After hearing, the learned court below awarded the fund to the heirs at law of testator's wife. The exceptions filed by the Commonwealth were thereafter dismissed and a final decree entered affirming the action of the hearing judge. This appeal by the Commonwealth followed.

It is clear that the daughter, Naomi, took a life estate under the will, rather than a fee. If a testator employs language adequate for the purpose (as was done in the will before us), he can effectively manifest an intent to grant a less estate than might otherwise appear from a preceding portion of his will: *Hanna's Estate,* 344 Pa. 548, 550, 26 A. 2d 311; *Ramsey's Estate,* 346 Pa. 157, 159, 29 A. 2d 493. We agree with the following statement of the court below: "In the present case the testator gave 'to my daughter Naomi all the residue of my estate' but in the same sentence adds 'after . . . other provisions herein after made are executed.' In the same paragraph the testator sets up a trust in the executors of all the residue for his daughter, indicating that she is not to have possession or control of the fund, and he further designates certain duties to be performed by the executors as trustees. The testator further appoints a guardian for his adult daughter, Naomi, and provides for certain duties for him in coöperation with the executors . . . The last paragraph of the will provides for a limitation over at the death of Naomi to 'my legal heirs'. Upon consideration of the whole will and all the language used by the testator there appears the intention of the testator to give only a life estate to his daughter Naomi."

We must ascertain what the testator meant by the use of the words "my legal heirs". It is well settled, as we said in *Conner's Estate,* 346 Pa. 271, 273, 29 A. 2d 514: ". . . we must keep in mind that it is not the province of the court 'to consider what the testator possibly intended, but only what intention is expressed in the language used': Joyce's Est. 273 Pa. 404, 407, 117 A. 90; Biles v. Biles, 281 Pa. 565, 568, 127 A. 235." The term "legal heirs" is a technical one, and means those who take property by the law of inheritance (*Bowen's Estate,* 139 Pa. Superior Ct. 523, 528, 12 A. 2d 507), unless a contrary intent is indicated by the will (*Wunder's Estate,* 270 Pa. 281, 283, 113 A. 378).

We are convinced that there is nothing in this will to indicate an intent on the part of testator that the residue of his estate should pass, upon the death of his daughter, to any person other than his own heirs by blood. The will contains no ambiguity or contradiction calling for parol testimony to make clear testator's intention. Therefore, it was error for the court below to admit, over objection, oral testimony tending to impute to testator an intention to include nieces and nephews of his predeceased wife by his use of the words "among my legal heirs". In holding parol evidence inadmissible under such circumstances we said in *Root's Estate,* 187 Pa. 118, 120, 121, 40 A. 818: "A doubt as to the intention is raised by evidence outside the will, but not by the will itself. We can make a will for the testator by ascertaining from witnesses that his wife had a nephew of the same name who, from his greater intimacy with and kindness to his aunt's husband, was more deserving of the legacy than the blood nephew, and therefore, according to our notions, ought to have it; in other words, we create a doubt where by the will the intention is beyond doubt."

Section 1 of the Act of June 29, 1923, P. L. 914, provides, inter alia: "That hereafter when, in and by the provisions of any . . . will . . ., property, either real or personal, or both, shall be . . . devised, or bequeathed, either directly or in trust, for the use and benefit of any person, for life . . ., and which shall provide therein that, upon the termination of the estate . . . for life . . ., the remainder over shall vest in the . . . testator's heirs or next of kin or the persons thereunto entitled under the intestate laws, or other similar or equivalent phrase, the same shall be construed as meaning the person or persons thereunto entitled at the time of the termination of the estate . . . for life . . . under the intestate laws of the Commonwealth as they shall exist at the time of such termination; and such phrases shall not be construed as meaning the person or persons

who were the heirs or next of kin . . . at the time the testator died . . ." The evidence in the instant case establishes the fact that testator, had no "legal heirs" at the time his daughter, the life tenant, died on April 29, 1945. Therefore, as to the residuary estate, following the life estate which the daughter took under the will, her father died intestate. That intestacy related back to the time of his death on January 2, 1934: *Knox's Estate (No. 2)*, 328 Pa. 188, 191, 195 A. 34; *Schuldt v. Reading Trust Co.*, 292 Pa. 327, 332, 141 A. 152. At that time Naomi was living, and under the intestate law she was her father's only heir and entitled to that portion of his estate of which he died intestate. She having since died, the learned court below erred in not decreeing distribution of this remainder interest to the administratrix of her estate.

Decree reversed, and the record is remitted to the court below in order that a decree of distribution may be entered in compliance with this opinion.