Burpee Estate.

Argued April 12, 1951. Before STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*William C. Bodine,* with him *Joseph F. Tilghman, Philip L. Leidy, Thomas Ross, Pepper, Bodine, Stokes & Hamilton* and *Ross & Smith,* for appellants.

*Irving N. Kieff,* Deputy Attorney General, with him *Francis J. Gafford,* Deputy Attorney General and *Robert E. Woodside,* Attorney General, for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 21, 1951:

The appeals concern the construction of a portion of the will of Washington Atlee Burpee, deceased, and of an *inter vivos* trust deed or agreement which incorporates the testamentary provisions by reference. The question is whether testator's widow, Blanche S. Burpee, was possessed of a defeasible fee or whether such interest constitutes a life estate. There is no controversy be-

tween the parties. The construction determines inheritance tax liability.

Testator, Washington Atlee Burpee, died November 26, 1915, leaving to survive his widow, Blanche S. Burpee, (who died unmarried November 10, 1948) who elected to take under the will, and three sons: W. Atlee Burpee, Jr., David Burpee and Stewart Alexander Burpee (the latter for reasons unnecessary to recite has no interest in this case). Under Item 8 (a) of the will, dated May 27, 1913, testator provided: "I give and bequeath the one-third part of all my personal estate . . . unto my said wife *absolutely* . . . ." (Emphasis supplied)

The item continues: ". . . provided however, that as to the one third of my personal estate herein bequeathed, to my said wife so much of the same as shall amount to the one-third interest in the capital invested in my seed business, so long as it shall be continued after my death by my executors or controlled by my sons, David Burpee and Washington Atlee Burpee, Jr., or either of them as hereinafter directed, shall remain in and be applied to and used in said business, she to participate and share in the profits therefrom to the extent of her said one-third interest, but not to be used to prevent or interfere with the control of said business by my executors or said sons. But in the event of her remarriage, I direct that her right to share in the said profits shall cease, and that the value of her share in said business, to be computed from and as of the last preceding inventory and book value of said capital, excluding any allowance for good will, shall be paid to her in cash, or at her election, exercised within ten days of such remarriage, the amount of her one-third interest in said capital or business as a loan, to be evidenced by a note or notes which shall be of a non-negotiable character, but held for the purpose of evidencing the indebtedness, from year to year, beginning at the time of my death, she receiving interest thereon at six percent per annum. Upon failure

to pay said interest within thirty days after the same shall become due, she shall have the right to demand and receive the principal of such loan. After my said sons or either of them shall acquire control of said business, should the aforesaid contingencies of a remarriage of my widow and the creation of a loan arise, then they, he or she may terminate said loan upon three months notice, to either party from the other, prior to the end of any fiscal year when said loan shall fall due."

Item 9 provides: "I give and bequeath unto my two sons, David Burpee and Washington Atlee Burpee, Jr., the full one half interest and share in my seed business and all the property, assets and belongings of same, together with resulting rights to them in the other interests bequeathed in trust or otherwise in and under Clauses a, b, c, d, e of Item 8 of this my Will:

"Subject however to the several interests and rights thereto and therein in the several legatees therein named, for, under and during the periods therein specified and the conditions therein imposed, nothing herein to deprive my said wife of the one third share in my personal estate *absolutely* as hereinbefore bequeathed." (Emphasis supplied)

Under Item 10 the executors with concurrence of the wife and sons were authorized to incorporate the seed business. This they subsequently did. On November 30 1917, an agreement was entered into as narrated in appellants' paper book: ". . . Mrs. Burpee, as party of the first part, the corporation as party of the second part, and David Burpee and W. Atlee Burpee, Jr., as parties of the third part, entered into the agreement pursuant to which the latter hold title to the 2000 shares of stock of the W. Atlee Burpee Company now in dispute.

"This agreement, after quoting Items 8 (a), 10 and 16 of the will, stated that it had been decided to incorporate the business, that a corporation had been formed for the purpose of carrying on said seed business

and effectuating the intentions of said will, that Blanche S. Burpee had subscribed to 2500 shares of stock of the par value of $100.00 and the company was willing to accept in full payment of her subscription 'the interest in said seed business bequeathed to her by the aforesaid will' and to accept in payment for the further 500 shares 'a release of her dower interest in the real estate mentioned in Item 16 of said will being . . .'.

"The recitals concluded that Mrs. Burpee 'has agreed to hold the said stock upon the same terms and conditions and with the same rights as she would have held the property represented to thereby bequeathed to her by the will of W. Atlee Burpee, deceased :'.

"The agreement provided that 'for the purpose of carrying out as nearly as may be the intention of the said will of W. Atlee Burpee, deceased,' it was agreed that 2000 shares of stock subscribed for by Mrs. Burpee should be issued in the names of 'David Burpee and W. Atlee Burpee, Jr., Trustees for Blanche S. Burpee' to be held by them in trust with full power to vote the same so long as they or either of them controlled the company, and to pay the dividends to Blanche S. Burpee so long as she remained unmarried. In the event of her remarriage, David and Atlee agree to pay her for the stock on a valuation basis and in a manner substantially similar to that provided in Item 8 (a) of the will. There are no specific provisions in the deed covering the event of the control of the business passing from David and Atlee nor the event of Mrs. Burpee's death.

"The other 500 shares (representing the release of dower) were to be issued in the same way but Mrs. Burpee was to have the right to direct their voting so long as she remained unmarried (in the event of remarriage the voting power passed to the trustees) and she was to receive the income for life. On her death these 500 shares were to be transferred to David Burpee and W. Atlee Burpee, Jr., share and share alike.

"David Burpee and W. Atlee Burpee, Jr., still control the W. Atlee Burpee Company . . . ."

Counsel states that the executors of the estate of Washington Atlee Burpee, deceased, filed their account but the same was never audited and no decree of distribution was ever entered. The trustees under the *inter vivos* trust filed their account on February 2, 1949. The confirmation of the decree of distribution by the Orphans' Court is the subject of the exceptions. The learned court below in confirming the auditor's report ruled that the widow possessed a defeasible fee and not merely a life estate.

At the outset it is to be observed that testator by Item 8 (a) of the will bequeathed his widow a third part of *all* his estate *absolutely*. He directed (a) that the third part so given to his widow absolutely and invested in his seed business should be continued therein; that his two sons should continue to manage the business and that the widow should not interfere with the sons' business management; and (b) if the widow should remarry then her interest in the seed business should cease and the value of her share therein (excluding any allowance for good will) should be paid to her in cash or at her election to become a debt with interest secured by notes.

As to the first direction (a) : it is apparent from the words of the will that the *dominant* purpose of testator was an *absolute* bequest of one-third of his personal estate which included his seed business. His modifying direction, however, was that such share so given absolutely should remain invested in the business while his sons were managing it and that the widow should not interfere with the sons' management. Such language indicates a subordinate intent to strip the fee of one or more of its inherent attributes. This cannot be done. The quality of the estate remains as a *fee*, released from all attempted restraints : *Pattin v. Scott,* 270 Pa. 49, 112 A. 911; *Byrne's Estate,* 320 Pa. 513, 181 A. 500; *Ramsey's*

*Estate,* 346 Pa. 157, 29 A. 2d 493. But the question of void restraints upon alienation is not raised by this case and is not before us. The widow permitted her interest to remain in the business and she did not interfere with her sons' management of the business.

Concerning the second direction (b) relating to the effect of the widow's remarriage: there can be no doubt that an absolute estate may be cut down in a will to a lesser estate or interest. Such result, however, may be effective only when clear and unambiguous language is used: *Haydon's Estate,* 334 Pa. 403, 6 A. 2d 581; *Harris Estate,* 351 Pa. 368, 377, 41 A. 2d 715; *Sarver Estate,* 353 Pa. 140, 44 A. 2d 580. This is precisely what testator did do and in language crystal clear. In case the widow remarried he directed that she should no longer possess an absolute one third interest in the *business.* Her interest in the *business* was thereupon to cease and end. In lieu thereof the widow was given a *diminished* sum (because of the exclusion of the valuable good will of the business). This amount, at the widow's election, was nevertheless to be paid to her in cash or left as a loan secured by notes. *This reduced share was payable to the widow ABSOLUTELY and not merely for life.* It is plain that in clear and unequivocal language, in case of remarriage the interest of the widow irrespective of *quantum,* was an *absolute* one and not for a lesser estate.

The learned counsel for appellants argues that the void restraints upon alienation are evidence of testator's intention to give a lesser interest than a fee. With this we do not agree. If the restraint upon alienation is void the beneficiary takes freed from all restraint. It was within the powers of testator to cut down the absolute estate in the event of the widow's remarriage, or to revoke the entire gift.

*Cooper v. Pogue,* 92 Pa. 254, relied upon by appellants, is inapposite. There the gift was of *income* so long as the beneficiary remained his widow. In the instant

case the gift was to the widow *absolutely* and was cut down only in case she remarried. *Patton v. Pearson Church et al.,* 168 Pa. 321, 31 A. 1079, and *Schaper v. Pittsburgh Coal Co.,* 266 Pa. 154, 109 A. 762, are both cases where the devise was limited to the widowhood of the widow. In the instant case the gift was *absolute* and was reduced in *size* only in case she remarried. In *Kautz v. Kautz et al.,* 365 Pa. 450, 76 A. 2d 398, the devise was to a wife "so long as she remains [his] widow and keeps my three children together." This Court held that the widow's title was a defeasible fee. This was merely adding a condition the breach of which would have operated to terminate her fee.

Testator directed payment to the widow of her share of the profits while her interest remained in the business and her sons still managed it. It also provided for cessation of profits should the widow remarry. Reading the will from its four corners there is not the slightest indication of the grant of only a life estate. It is a defeasible fee.

What the widow or testator's counsel thought or said concerning the construction of this will can, of course, have no part in the present consideration. In construing a will it is not what a testator may have meant or what a beneficiary or attorney thought testator may have meant, but it is the meaning of testator's *words* which alone control: *Farmers Trust Company, Executor, v. Wilson et ux.,* 361 Pa. 43, 46, 63 A. 2d 14, and cases therein cited.

There is no reasonable ground to hold that the words of either the will or deed were equivocal and susceptible of two interpretations. Therefore, the admission and acts of the parties are no aid in the construction. The case of *Thompson Trust,* 348 Pa. 228, 35 A. 2d 261, in which it was claimed that equivocal words were used, applied the principle that a gift of income, interest or profits without limitation as to time constitutes a fee,

has no application to the present case. That the parties in that case, as well as settlor, regarded the interpretation of that deed as did the court below, can have no bearing upon the present will. Here the meaning of testator by his language is clear and *unequivocal*. Nor can the parties who conveyed to *inter vivos* trustees in compliance with the provisions of the will, grant or receive a greater interest than the will itself gives them. It is therefore immaterial that the language of the will and deed in some particulars may vary. It is *testator's* testamentary direction which must be fulfilled.

The decree is affirmed at the cost of appellants.