## Stineman, Appellant, v. Stineman.

Argued April 26, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and ARNOLD, JJ.

154

*P. D. Larimer*, with him *Englehart, Larimer & Englehart* and *Shettig, Swope & Shettig*, for appellants.

*A. A. McDonald*, with him *Harry Doerr* and *Myers & McDonald*, for appellees.

*R. E. Porter*, with him *Greenwell & Porter*, for J. Wilbur Stineman, appellee.

OPINION BY MR. JUSTICE BELL, May 23, 1955:

Appellants, grandchildren and heirs of the testator, Jacob C. Stineman, filed a bill of complaint in equity for a partition of real estate devised by testator, including so-called coal and fire-clay real estate. Preliminary objections were sustained as to the real estate which contained coal and fire-clay, and the bill as to said land was dismissed, on the theory that the will created a trust with respect to such real estate, and that an absolute gift to named children of testator had been cut down by subsequent testamentary language to a lesser estate. Neither the interpretation nor the conclusion can be sustained.

In the Fourth paragraph of his will testator gave to named trustees the sum of $5,000 in trust for the persons and purposes therein clearly and specifically set forth. He then provided as follows: "Item. All the rest and residue of my estate, real, personal and mixed, I give, devise and bequeath the same to my following named children: Albert M. Stineman, W. I. Stineman, Harvey C. Stineman, Nettie M., intermarried with George A. Slick, Oliver M. Stineman and Jacob Wilbur Stineman, share and share alike, to have and to hold the same to them and to their heirs and assigns, forever. Jacob C. Stineman.

"It is my will and desire that the coal and fire-clay in the real estate of which I may die seized, shall be retained by my children hereinbefore named, and that the same be operated under leases made in my lifetime, or under leases to be made by my Executors hereinafter named, or the survivor of them, which leases shall have the same force and effect as though made by me, and that *no sale* of said coal and fire-clay be made unless such sale *meets with the approval of all of my children* hereinbefore named, *or the heirs** who may inherit under the provisions of this, my last will and testament, by reason of the decease of his, her or their parent; this provision, however, not to prevent or limit the sale of any portion of the coal or fire-clay of which I may die seized under like terms and conditions. In the event of the sale of the coal and fire-clay in the real estate of which I may die seized, under the provisions and restrictions herein mentioned and for which royalties are payable to my estate, part of which is herein bequeathed to my wife, Ellen Stineman, for the term of her natural life, then and in that case I *direct* that a sum equivalent to six (6%) per

---

* Italics throughout, ours.

centum of the amount realized from such sale, be set apart by my Executors hereinafter named, or the survivor of them, and invested in good real estate or other security or securities, and the income derived therefrom to be paid *to my said wife* in quarterly installments for and during the term of her natural *life,* and *at her death* be divided among my children hereinbefore named, share and share alike."

We shall assume arguendo that, as the Court below held, the language of the residuary devise was not ambiguous. On the basis of this assumption, it is clear that testator gave his residuary estate in fee simple to his named children; and that after this gift he expressed his will and desire that the coal and fire-clay (in the real estate which he had already devised to his children and which was then or in the future covered by leases) should not be sold unless the sale was approved by all of his children or their heirs; and in the event of the sale of the coal and fire-clay, a small part of the proceeds, namely, a sum equivalent to 6% of the proceeds of such sale, should be invested and the income paid to his wife for her life and at her death the sum be divided among testator's named children, share and share alike.

Testator died in 1913; his wife predeceased him. The provisions of the will disposing of his residuary estate boil down to this:

Testator gave his residuary estate, including the coal and fire-clay therein contained, to his children absolutely and in fee simple. He then directed, not by precatory words but by mandatory words [namely "will" and "direct"], that the coal and fire-clay should not be sold unless the sale was approved by all of his children *or their heirs.* It will be instantly noted that testator did not expressly create a trust as to the coal and fire-clay included in his residuary estate, although

in other portions of his will he had demonstrated that he knew how to create an express trust if he so desired. It is also important to note that there was no gift over to third parties in the event of sale or failure to sell; and the prohibition against sale contained no period of duration and no time limit. The nearest approach to a time limit was that a sale had to be approved by all of his children or their heirs. Such an indefinite provision might violate the rule against perpetuities; or if it was intended to terminate in the event of a sale, it terminated at testator's death because the (some of the) proceeds of sale were to be paid to testator's children upon the death of testator's wife, and she predeceased him.

This is not a case, as the parties thought, of whether precatory or mandatory words cut down a fee. The testator's subsequent words, upon which appellees rely, do nothing more than prohibit for an indefinite period of time the sale of the coal and fire-clay which he had given absolutely to his named children, unless the sale was approved by all of his children or their heirs.

The rule applicable to this will is that an absolute gift cannot be limited or fettered by restrictions on sale or alienation. While it is rare that one will governs another, Stineman's will is controlled by *Pattin v. Scott*, 270 Pa. 49, 112 A. 911. In that case testatrix gave all her residuary estate to her niece and her heirs forever, "with this proviso, that she . . . shall not have the right to sell and convey in fee simple . . . premises Nos. 425 and 427 Second Avenue [Pittsburgh], for a period of Twenty-five (25) years after my decease." The Court held that where a will gives a fee simple estate, a prohibition against sale for a period of 25 years is absolutely nugatory. Mr. Chief Justice MOSCHZISKER said (pages 51, 53-54) : "Where a testator in the first instance uses language suitable to the grant

of a fee simple estate, but, by subsequent words, immediately following in the devise, indicates a dominant intent to give only a less estate, the latter purpose will be upheld: Sheets's Est., 52 Pa. 257, 263; Urich v. Merkel, 81 Pa. 332, 335; Boulevard from Second Street, 230 Pa. 491, 495; Field's Est, 266 Pa. 474, 477; 1 Jarman on Wills, 416.

"On the other hand, where it is apparent from the words of the will that the dominant purpose of the testator is to devise a fee simple estate, and the subsequent language indicates merely a subordinate intent to strip the estate thus given of one or more of its inherent attributes, the law will hold that this cannot be done; and the fee simple estate passes to the devisee with all of its inherent qualities:* Reifsnyder v. Hunter, 19 Pa. 41, 44; Walker v. Vincent, 19 Pa. 369, 371, 372; Doebler's App., 64 Pa. 14, 17; Sanders v. Mamolen, 213 Pa. 359, 361; Breinig v. Smith, 267 Pa. 207, 211.

. . .

". . . 'a testator in giving a fee cannot strip it of its nature and properties. He cannot withhold from such an estate qualities which the law recognizes as inseparable from it': Boulevard from Second Street, 230 Pa. 491, 495; and see Levy's Est., 153 Pa. 174, 179; Jauretche v. Proctor, 48 Pa. 466, 471; Phila. v. Girard's Heirs, 45 Pa. 9, 27; Huber v. Hamilton, 211 Pa. 289, 290; and Allen v. Hirlinger, 219 Pa. 56, 58. After formally giving a fee, to deny the right of alienation for twenty-five years, as in the present case, is as much an attempt to 'withhold' an 'inseparable quality' as to deny it entirely—the only difference is in degree, not in character.

---

* For a very interesting discussion and review of (a) restraints on alienation, and (b) the reduction of a fee simple estate to a lesser estate, see *Byrne's Estate*, 320 Pa. 513, 181 A. 500.

"In the case at bar, 'no one could limit a fee simple more artistically and precisely' (Reifsnyder v. Hunter, 19 Pa. 41, 44) than does the present testatrix; and it is to be noted that, after making this correct limitation of the fee, while she attempts to restrict the alienation thereof during a period of twenty-five years, *there is no mention of a devise over, nor of forfeiture upon alienation within the prescribed period.* There is simply the bare attempt to take from the owner of the fee the right of alienation for a period of years; and this, after the grant of a fee simple estate, was beyond the power of testatrix to accomplish. If testatrix desired to keep her property in the hands of one person during the indicated period, she might have created a trust for that purpose; but she could not give a fee and restrict its alienability as she attempted to do."

It is horn book law that the intention of the testator is the pole star in the construction of every will and that intention must be ascertained from the language of the entire will. When we consider Stineman's will in its entirety we find that his dominant purpose and intent was to give his named children a fee simple estate and his subordinate purpose was to limit or prohibit the sale of coal and fire-clay contained in certain parts of said real estate unless all his children or their heirs approved.

The language of Justice STEARNE in *Burpee Estate,* 367 Pa. 329, 334, 80 A. 2d 721, is equally pertinent to this Stineman will: "At the outset it is to be observed that testator by Item 8(a) of the will bequeathed his widow a third part of *all* his estate *absolutely.* He directed (a) that the third part so given to his widow absolutely and invested in his seed business should be continued therein; that his two sons should continue to manage the business and that the widow should not interfere with the sons' business management; . . . As

to the first direction (a) : it is apparent from the words of the will that the *dominant* purpose of testator was an *absolute* bequest of one-third of his personal estate which included his seed business. His modifying direction, however, was that such share so given absolutely should remain invested in the business while his sons were managing it and that the widow should not interfere with the sons' management. Such language indicates a subordinate intent to strip the fee of one or more of its inherent attributes. This cannot be done. The quality of the estate remains as a *fee,* released from all attempted restraints: Pattin v. Scott, 270 Pa. 49, 112 A. 911; Byrne's Estate, 320 Pa. 513, 181 A. 500, Ramsey's Estate, 346 Pa. 157, 29 A. 2d 493. . . ."

In the instant case the children of the testator joined with the executor in making certain leases of coal and fire-clay properties, and for a period of 30 years have divided the royalties equally. During this period none of the children claimed a fee simple title. The properties are now largely exhausted of coal and fire-clay, the wife predeceased the testator, and the plaintiffs wish a partition of the property which the testator devised to them in fee simple.

Where the words of a will are not equivocal nor susceptible of two interpretations, the fact that the heirs did not realize that they had a fee simple interest but believed that their father's will created a trust— assuming that was their belief—their 30 years' aforesaid practice or acquiescence does not, under the facts of this case, create an estoppel. Cf. *Burpee Estate,* 367 Pa., supra, pages 336-337.

The decree of the Court below is reversed with directions to reinstate plaintiffs' bill of complaint in equity as to land underlaid with coal and fire-clay, and to grant such further relief as it deems meet in accordance with this opinion.