Swope Estate.

Argued November 29, 1955. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

John I. Hartman, Jr., with him Windolph & Johnstone, for appellant.

No argument was made nor brief submitted for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, January 6, 1956:

This appeal concerns the construction of a holographic will, a photographic copy of which is as follows:

May 16th 1947
This is my last will and testment
I am of sound mind and body
I here by name my nephew
Donald, Swope exectutor and
shall bequeath the sum of
$5.000 and balance of my
estate To be equal divided among
my two Sons John + Paul, and
my funerial expenses To be
paid, also would like To
have Donald Swope To
take charge of the furnial.
Walter F Swope

Testator died February 20, 1954. He left to survive him as his only heirs two sons, John and Paul. According to the audit of the executor's account, the estate consists of $16,517.80. The auditing judge awarded the net estate to the two sons. Donald Swope, testator's nephew, contends that he should have been awarded a pecuniary legacy of $5,000. The pivotal question in construing the will is the meaning of the letters "stieial". Judge BOWMAN, in his opinion, states: *"Counsel for exceptant concedes that it is meaningless and that there is no word which either sounds like or resembles this combination of letters."* We agree with this observation. It is contended by exceptant that these unintelligible letters, whether read as "stieial" or "stecial" sound like *special* and hence testator's intent is apparent that his nephew not only was to be his executor and to take charge of his funeral, but was to receive "a special bequest of $5,000."

There is little which we can profitably add to the opinion of the learned court below. In expounding a will, it is not what the testator may have meant, but what is the meaning of his words. It does not extend to a consideration of what testator might have said, but did not say: *Weidman's Appeal,* 2 Walker 359; *Estate of Andrew Nebinger,* 185 Pa. 399, 39 A. 1049; *Ludwick's Estate,* 269 Pa. 365, 112 A. 543; *Rosengarten Estate,* 349 Pa. 32, 36 A. 2d 310; *Myers Estate,* 351 Pa. 472, 41 A. 2d 570; *Leopold Estate,* 356 Pa. 543, 52 A. 2d 458; *Berger Estate,* 360 Pa. 366, 61 A. 2d 855; *Burpee Estate,* 367 Pa. 329, 80 A. 2d 721; *Britt Estate,* 369 Pa. 450, 454, 87 A. 2d 243. A comprehensive statement of this principle is made by Mr. Justice JONES in *Farmers Trust Company v. Wilson,* 361 Pa. 43, 46, 63 A. 2d 14: "In Weidman's Appeal, 2 Walker 359, 361, 42 Leg. Int. 338 (1885), Mr. Justice TRUNKEY quoted with approval for this court to the effect that 'The

question in expounding a will is not what the testator meant, but what is the meaning of his words.' That pronouncement has since been reiterated by the courts of this State many times without question down to the present: e.g., Myers Estate, 351 Pa. 472, 474, 41 A. 2d 570; Rosengarten Estate, 349 Pa. 32, 38, 36 A. 2d 310; Brock Estate, 156 Pa. Superior Ct. 616, 619, 41 A. 2d 347; Tombs Estate, 155 Pa. Superior Ct. 605, 609, 39 A. 2d 367; etc. The principle, of course, does not mean that, where a testator's intention is clear, it may be disregarded on the basis of a literal interpretation of his testamentary words. But, it does mean that a testator's intent is not to be arrived at by the expounder's subjective deductions as to what the testator might have meant, or even perhaps did mean, but did not say: cf. Ludwick's Estate, 269 Pa. 365, 371, 112 A. 543. The scope of the inquiry is limited to the meaning of what the testatrix said."

In *Morrison Will,* 361 Pa. 419, 65 A. 2d 384, these principles were again restated. The case of *Eaton v. Brown,* 193 U. S. 411, was there cited, p. 421, in which Justice OLIVER WENDELL HOLMES said "The English Courts are especially and wisely careful not to substitute a lively imagination. . . ." In *Rouse Estate,* 369 Pa. 568, 87 A. 2d 281, where the suggestion was made in the court below that there might have been an accidental omission or oversight, we said (p. 573) : "We do not subscribe to the *conjecture* of the court in banc that 'the balance of express language as to the event which occurred was an oversight of the scrivener.' If there were an *omission,* such omission might not be remedied by judicial construction. In Grothe's Estate, supra, Justice MESTREZAT said, p. 192: '. . . if it was an oversight, the courts have no authority to insert a provision . . . under the assumption that it was the intention of the testator. It is only when the lan-

guage of the will expressly or by clear implication discloses the intention of the testator that the courts may carry it out. It will not do for the courts to undertake to guess at the intention of a testator and declare that to be his will. If he sees fit for any reason not to dispose of any part of his estate, or such is the result of ignorance or oversight, the courts cannot supply the gap or hiatus and reconstruct the will. To do so would be a perversion of the functions of the court, and deprive a testator of the right to dispose of his property.' See: Morrison Will, 361 Pa. 419, 65 A. 2d 384, and cases therein cited."

We do not agree with appellant that by eliminating consideration of the unintelligible word and the word "bequeath", it is plain that the remaining words: "I here by name my Nepew Donald Swope exectutor and ... the sum of $5.000 ..." indicate a legacy to the nephew. There are no dispositive words. Testator may have so meant, but the words he employed do not so state. It is equally arguable that the words "I here by ... bequeath the sum of $5.000 and balance of my estate To [the sons] ..." is a devise and bequest to the sons. True, testator did not need to mention $5,000 if he intended to pass it with his residue. But this fact alone is not controlling. This Court will decline to surmise testator's intent by resorting to speculation or conjecture. The sons, the heirs of testator, are the natural objects of testator's bounty. Where the usual, natural, just and legal course of distribution is to be changed, it must be done by words reasonably free from ambiguity: *Weber's Appeal,* 17 Pa. 474; *Hirsh's Trust Estate,* 334 Pa. 172, 177, 5 A. 2d 160.

The decree is affirmed. Costs to be paid from the estate.

DISSENTING OPINION BY MR. CHIEF JUSTICE HORACE STERN:

In this crudely written holographic will the "pivotal" word is, in my opinion, incorrectly read by the majority as "stieial"; there is, of course, no such word and the testator certainly did not intend to write a meaningless one. The word is "special,"* and, so interpreted, the entire will immediately takes on form, sense and meaning. The testator evidently held his nephew Donald Swope in high esteem. He did not make either of his sons Executor; he made Donald Executor, and further showed his regard for him by saying that he would like *him*, not either of the sons, to take charge of the "furnial" [funeral]. What more natural, then, than a "special" bequest to him of $5,-000? To hold that that bequest was intended for the sons, followed immediately, as it was, by a bequest of the entire balance of the estate to them, involves a patent absurdity. The testator was illiterate, but I do not think that that justifies the construing of his will in a manner so obviously foreign to his intention.

I therefore dissent.

Mr. Justice MUSMANNO joins in this opinion.

---

* The letters are not "ti" but a single letter "p"; the only omission in the word is the letter "c", but many of the words in the will omit one or more letters.