## Sanders Estate

*Randolph Myers* and *James H. Stratton, Jr.*, for petitioner.

*Ralph J. Talarigo*, for respondent.

O'KICKI, *J.*, June 20, 1979—The issue in this case is whether an interpretation of a provision in the will which provides for a residence in a home can be or should be interpreted to include as an obligation of the estate the payment of utility charges for the continued residence of the beneficiary.

Charles R. Sanders died on November 30, 1973, testate, with an estate valued at approximately $87,000. Harry Sanders, his son, was appointed executor on February 28, 1974, the day that the will which serves as the subject matter of this controversy was filed. Marcella Connell, sister of decedent, had lived with her brother for more than 20 years as a housekeeper. During his lifetime Charles R. Sanders paid all expenses for operation of his home. His sister Marcella rented some of the rooms to boarders and kept such rentals for her own use.

On her behalf an exception was filed to the accounting of the executor alleging that the executor had failed to comply with paragraph five of the will in that he had not provided for the payment of utility charges as they had been provided for Marcella by the testator during his lifetime.

Paragraph five of the will provides: "All of the rest, residue and remainder of my estate, real, personal and mixed, whatsoever and wheresoever, I give, devise and bequeath the same to Cassandra Bottling Company, Inc., to have and to hold the same absolutely. At the present time my sister,

Marcella Connell, resides in a home that I own at the corner of Main Street and Portage Street in Cassandra Borough, and said real estate is included in the above described residue clause. It is my intention and desire that my sister, Marcella Connell, shall have a home in said premises, free of rent and other charges so long as she desires and shall live."

From the time of the death of the testator and until May 1975, the sister, Marcella Connell, continued to live in the Sanders home. She did not pay any rent and the estate paid the taxes, fire insurance and kept the property in repair. The issue arises from the estate's refusal to pay water bills, electric bills and heating bills. Because of the inflationary nature of our present economy, as well as the skyrocketing energy bills, the sister was unable to pay the expenses of her utility bills from social security checks and room rentals. She vacated the estate home in May 1975, and moved in with her niece in the neighboring town of Cresson.

The first consideration for the court is the nature of the right created in Marcella Connell. In a similar case: Graham v. Heidrick, 204 Pa. 238, 53 Atl. 1002 (1903), the Supreme Court of Pennsylvania faced a similar issue. In that case the testator provided: "I order that after my decease my wife Hannah shall occupy my present home as a residence during her natural lifetime and also my daughter Elizabeth as long as she remain single." That issue involved a farm over which an argument ensued among other heirs. The daughter Elizabeth claimed she had a right to occupy and use the entire farm. In disposing of that issue the court established a well-settled rule of construction of wills,

i.e.: "The intention of the testator must determine her estate." See also Matter of Blough Estate, 474 Pa. 177, 378 A. 2d 276 (1977). Similarly in Swope Estate, 383 Pa. 494, 119 A. 2d 57 (1956), the Pennsylvania Supreme Court, in refusing to identify unnamed beneficiaries of express bequests said that the "Court will decline to surmise testator's intent by resorting to speculation or conjecture."

In this present Sanders case there is a similar need for interpretation of clause five of the will. The testator, long known as a successful businessman in the Borough of Cassandra for many years, had the benefit of advice from his solicitor who drew up the instrument. Had the testator intended to have the estate obligated for payment of utility bills, he would have so expressed that intention in the document. There is no such announced intention in the will. In providing for occupance of the premises free of rent and other charges, it is evident that the other charges relate to the upkeep and maintenance of the home, such as fire insurance, taxes and repairs—but not those items which are personal for the comfort of the individual. Since the testator had provided for all expenses of the household, including food, during his lifetime, it cannot be expected that food likewise be supplied by the estate after his death. Those personal gifts which enured to his sister's benefit because of his charity during his lifetime must be expressly set forth in the will for such an obligation to continue.

We conclude that the testator provided to his sister a license to occupy his home free of rent, taxes, fire insurance and repair obligations. This license was terminable by her at her will. No other obligation was placed upon the estate. Having vacated

the property in May 1975, we further find that Marcella Connell has vacated and abandoned her license to continue occupancy of the testator's residence.

Therefore, the claim by Marcella Connell for the payment of utility charges from the date of the death of the testator until May 1975, is denied. Accordingly, we will enter the appropriate order.

## ORDER

And now, June 20, 1979, the first and final account of Harry Sanders as filed in the above matter is confirmed and approved absolutely.

## ORDER

And now, June 20, 1979, in accordance with the foregoing findings, it is ordered and decreed as follows:

(1) The objections to the account totalling seven in number are dismissed;

(2) The estate has no obligation for maintenance bills or household expenses;

(3) The request to surcharge the executor of the estate for the value of a life estate is unsupported in law or fact.

Such claim is denied.