# Robinson's Estate.

*Wills—Devise—Gift in fee or life estate to widow—Power to dispose by will.*

1. Where the dominant purpose of a testator shown by a devise is to vest a fee, this estate cannot be stripped of its inherent attributes by subsequent words indicating an intent so to do.

2. Where the dominant purpose is to give a wife the fee, such purpose cannot be defeated by a secondary intent to control her disposition of it.

3. Where testator gives and devises his estate to his wife "absolutely and in fee simple" with power "to transfer and convey the same," and in a subsequent clause directs that as to "what she may still own" at her death, one-sixth thereof "shall go" to religious institutions designated by the wife's will, and the other five-sixths "to go" to testator's own relations specifying them, and further appoints his wife sole executrix, in whom he stated he has "perfect trust," the wife takes an estate in fee which is not cut down to a life estate by the later provisions.

4. In light of the fee left to the widow and that the wife's will was to be the medium of passing one-sixth of the remainder, it cannot be said with certainty, considering the collocation of the words, the five-sixths was not also to go in the same way.

5. In such case, as there is doubt as to how the interest in the five-sixths was to be vested at the widow's death, whether by her will or that of her husband, there is not such a clear intent as will strike down the manifest dominant purpose to vest in the wife a fee simple estate.

6. The provision authorizing the wife to "transfer and convey" the property given to her absolutely, indicates that testator knew that she could put it beyond the reach of any power over it which he might seek to exercise, and this circumstance is a factor aiding the conclusion that what he had in mind was a suggested or precatory control which his "perfect trust" in her led him to believe she would carry out.

7. When testator refers to the property as that which his widow "might still own," he refers to it as her property and not as his estate.

Argued January 26, 1925. Appeal, No. 228, Jan. T., 1925, by Edgar Berry, executor of estate of Jennie B. Robinson, deceased; Ruth Berry, now Ruth Vandermark, and Bernice Berry, from decree of O. C. Bradford

Co., May T., 1921, No. 52, dismissing exceptions to adjudication, in estate of Stephen F. Robinson, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Exceptions to adjudication. Before MAXWELL, P. J. The opinion of the Supreme Court states the facts.

Exceptions dismissed. Edgar Berry, executor of Jennie B. Robinson et al., appealed.

*Error assigned* was, inter alia, decree, quoting record.

*John C. Ingham* and *Rodney A. Mercur,* for appellants.—The widow took a fee: Evans v. Smith, 166 Pa. 625; Fidelity Trust Co. v. Bobloski, 228 Pa. 52; Jauretche v. Proctor, 48 Pa. 466; Cox v. Rogers, 77 Pa. 160; Levy's Est., 153 Pa. 174; Trout v. Rominger, 198 Pa. 91; Blasser's Est., 29 Pa. Dist. R. 610; Pennock's Est., 20 Pa. 268; Fisher's Est., 268 Pa. 405; Herskovitz's Est., 81 Pa. Superior Ct. 379; Miller v. Stubbs, 244 Pa. 482.

*H. K. Mitchell* and *David J. Fanning,* for appellee.— The widow took a life estate: Tyson's Est., 191 Pa. 218; Allen v. Hirlinger, 219 Pa. 56; Henninger v. Henninger, 202 Pa. 207; Wettengel's Est., 278 Pa. 571; Ferguson's Est., 76 Pa. Superior Ct. 599.

OPINION BY MR. JUSTICE SCHAFFER, March 16, 1925:

A number of questions are raised on this appeal; it is conceded, however, by all parties to the litigation, that one of them is controlling, if determined in the way we think it must be, and we shall therefore deal only with it.

Stephen F. Robinson died testate, leaving to survive him his widow, Jennie B. Robinson (whose executor and devisees are the appellants), his father, mother, five sisters, and no children. His will in its parts material to our consideration was thus phrased: "Item. I give, devise and bequeath unto my beloved wife, Jennie B. Robinson, all of my estate, real, personal and mixed, of whatsoever name, nature or kind, and wheresoever

situate, absolutely and in fee simple, investing her with full power to transfer and convey the same or any part thereof. Item. Whatever of the real, personal or mixed estate passing to my said wife by virtue thereof that she shall not have transferred or conveyed and may still own and hold title to at the time of her death, I hereby limit and dispose of the same as follows: One-sixth (1-6) of such remainder I direct shall *go* to and be distributed among such religious associations, churches and institutions of learning as shall be proportioned and designated by my said wife by will, the same being dedicated as a memorial to our son, J. Stewart Robinson, deceased; and the other five-sixths (5-6) of the said remainder of my estate existing at the death of my said wife, to *go* and belong to my father, J. C. Robinson, and mother, Martha Robinson, and the survivor of them, for use only during their lives and the life of the survivor of them, with remainder at the death of said survivor to my five sisters [naming them] share and share alike in fee simple forever. Lastly, I nominate, constitute and appoint my said wife, Jennie B. Robinson, in whom I have perfect trust, sole executrix hereof."

Following the death of Jennie B. Robinson, letters of administration d. b. n. c. t. a. were granted on the estate of Stephen F. Robinson to Benjamin B. Mitchell, who cited the executor and the beneficiaries under Jennie B. Robinson's will, to show cause why the property, real and personal, in her hands at the time of her death should not be turned over to the estate of Stephen F. Robinson, and the court below so decreed. If Jennie B. Robinson took but a life estate under her husband's will, the court was right; if she took a fee, it was wrong. What she did take is therefore the controlling question, and, if it was a fee, the only one.

Under the first quoted paragraph of the will, she took an estate in fee by the express words used by the testator, "all of my estate......absolutely and in fee simple." Was this fee simple gift cut down to a life estate by the subsequent language used? We have very

recently had occasion to give consideration to this question of fees given and their alleged reduction to a less estate in Smith v. Bloomington Coal Co., 282 Pa. 248. There, speaking through the Chief Justice, we said: "The guiding rule in such cases has been stated by us many times, the latest instance being in Deeter's Est., 280 Pa. 135, this court there saying at page 141, 'Where the dominant purpose shown by a devise is to vest a fee, this estate cannot be stripped of its inherent attributes by subsequent words indicating an intent so to do. .......On the other hand.......in finding the controlling intention, all the words used by testator should be taken into account, and if the intent to restrict [in the sense of making a gift of less than a fee] is clearly the dominant one, it must be given effect.'" After referring to other cases, the opinion points out that in Long's Est., 270 Pa. 480, 485-6, we said that after a testator had used words "sufficient to vest an absolute interest [he] must indicate a fairly clear intention to take away the estate previously given before a divestiture can be upheld." In the opinion from which we are quoting, this further language most pertinent to the case at bar was used, "In considering the present will as a whole, we are not particularly aided by those parts which make bequests or devises to persons other than testator's widow; however, when we read the portions dealing with the widow's interest, we can sufficiently deduce from them that testator's 'dominant purpose' was to give his......estate......absolutely and in fee to his wife, his secondary intent being to control her testamentary disposition of it." We think the same situation again confronts us, that here testator's "dominant purpose" was to give.his estate absolutely and in fee to his wife. He did so in so many words. Thereafter in undoubted precatory language he provided as to one-sixth of what "she shall not have transferred or conveyed and may still own and hold title to at the time of her death" that it shall "go to......such religious associations, etc., as shall be proportioned and designated by [his] said wife

by will." The medium of its "going" was the will of
his widow. At to the other five-sixths, it also was "to
go" to his father and mother for life with remainder to
his sisters. But what was to be the method of its
"going"? The testator had already sent it to his wife
absolutely and in fee, and in the light of this disposition
and of the fact that the wife's will was to be the medium
for the passing of one-sixth of the remainder, we think it
cannot be said with certainty, considering the collocation
of the words in the paragraph, that the five-sixths was
not also "to go" to the father, mother and sisters in the
same way. That the wife's will was to make this dis-
position finds some support in the statement by the tes-
tator of his "perfect trust" in her. Once it be assumed
that there is doubt as to just how the ultimate vesting of
the five-sixths interest in the property at the widow's
death was to be accomplished, whether by her will or
that of her husband, and we think there is this doubt,
then there is not such a clear intent as would strike down
the manifested "dominant purpose" of the testator to
vest in his wife the estate which he declared should vest
in·her, one absolute and in fee simple. The testator by
the language he used authorizing his wife to "transfer
and convey" the property which he had devised to her
absolutely, necessarily knew that she could put it beyond
the reach of any power over it which he might seek to
exercise; this circumstance is an added factor aiding
the conclusion that what he had in mind was a suggested
or precatory control which his "perfect trust" in her led
him to believe she would carry out. Then, again, he re-
fers to the property in question as that which his widow
might "still own"; in other words, as her property and
not as his estate.

In Evans v. Smith, 166 Pa. 625, the will was very
similar to the one we are considering. There the tes-
tator directed, "I give and bequeath unto my wife all my
estate both personal, real and mixed in fee simple to
own, use, enjoy and dispose of the same as she may
deem proper and right, the same as I might or could do

if living......I further hereby order and direct that whatever real estate that may not be sold or disposed of by my said wife in her lifetime that the same shall as soon as conveniently be done after her death, sold and converted into money......I give and bequeath to my three children......the residue of my said estate after the death of my said wife, and after the bequest to my said grandson......to be divided into three shares." It was held that the widow took an estate in fee simple in testator's lands.

Having reached the conclusion that Jennie B. Robinson, under her husband's will, took a fee simple estate in all his property, it follows that the appellees have no interest in it and the court erred in awarding it to them.

The decree of the court below is reversed, with direction to dismiss the proceedings brought against appellants; costs to be paid by appellees.