## Duld Estate

*Butz, Hudders, Tallman & Rupp,* for petitioners.
*Harold W. Helfrich, James L. Weirbach* and *Donald L. LaBarre,* for respondents.

GEARHART, P. J., June 19, 1956.—This dispute centers about the interpretation of the will of Mathias Duld, who died October 19, 1940, leaving a will dated

June 28, 1937, which has been duly probated. Frank H. Duld, a son, was granted letters testamentary. He died on November 13, 1953, subsequent to which the dispute ripened concerning the nature of the interest which Frank H. Duld had received under the terms of his father's will. Declaratory judgment proceedings were instituted in March 1954. These proceedings were terminated on December 1, 1955, by order of court pursuant to the prayer of petitioners for leave to discontinue the action. Proceedings were then instituted for an inquest in partition on the petition of Dorothy L. Busch, Marjorie G. Duld, a minor, by her guardian, The Lehigh Valley Trust Company, and Johanna Jones, now known as Jennie Jones. Dorothy L. Busch and Marjorie G. Duld are the children of Samuel Duld, deceased. To the petition for inquest in partition, Marjorie Duld, widow of Frank H. Duld, made answer. Subsequent thereto a pretrial conference was held and by mutual agreement the issue to be disposed of at the outset was declared to be the matter of the translation and interpretation of the probated will of Mathias Duld.

It should be here stated that the will of testator was a holographic one written in German script and when offered for probate contained a translation by Dr. Conrad Wilker, a recognized German scholar, now deceased. At a later hearing a translation by Dr. Preston A. Barba, also a recognized scholar, was submitted. In the opinion of the court there is no substantial difference in the two translations. The issue before the court at this time is to determine from an interpretation of the will what the respective interests of the parties are.

Petitioners contend that under the will of testator, the son, Frank Duld, held a life estate in premises 844 Jackson Street, 846-50 Jackson Street, 139 South Ninth Street and 1023 Lawrence Street, subject to a

charge against the premises in favor of testator's son, Samuel, for $4,000 and in favor of testator's daughter, Johanna, for $4,000. They further contend that there was a gift by implication of the premises to children of Frank Duld and that since Frank Duld died childless, the remainder in fee under the terms of the will vested in Johanna Jones and the children of Samuel Duld, the latter having died November 14, 1949, survived by the two children, petitioners as hereinbefore indicated. As to the gift to Frank's wife contained in the last dispositive line of the will, petitioners insist that she took but a one-third interest in the premises for life. Summing up the matter, petitioners contend that title to the premises is vested in them subject to a one-third life interest in Frank's widow, who is respondent in this case.

Respondent, on the other hand, contends that her husband, Frank Duld, under testator's will, took title in fee to the real estate on the payment of the sum of $4,000 to Samuel Duld and $4,000 to Johanna Jones. This constitutes the issue presently before us.

The will of testator as translated by Dr. Wilker and which accompanied the will at the time of probate is as follows:

"June 28, 1937

"I Mathias Duld, herewith declare the following: At the conclusion of my life my property, moveable and unmoveable, shall go over into the name of my son Frank. The house 844 Jackson St., 846-50 Jackson St., together with apartment 139 S. 9th St. and house 1023 Lawrence St. therefrom Frank shall pay my son Samuel four thousand dollars and my daughter Johanna four thousand dollars.

"The property shall not be sold as long as Frank Duld lives. Should he die childless then it is to revert to brother and sister, if they do not live to their children.

"If Frank's wife should out live him she shall have a right to one-third.

"This is my Will.

"Empowered by my own writing.

"Frank shall be the Executor.

"Mathias Duld
846 Jackson St.
Allentown, Pa."

Respondent's contention that Frank Duld took a fee rests upon the familiar principle of law that: " 'Where there is an absolute gift of a thing, later words in the same instrument will not operate to reduce the estate thus given, unless it is reasonably certain that such was the intention of the donor' ": Lerch's Estate, 309 Pa. 23, 27; Calder's Estate, 343 Pa. 30, 38; Fairman's Estate, 287 Pa. 334, 336; Byrne's Estate, 320 Pa. 513. And respondent argues that the primary intent of testator, to be gathered from the will and the circumstances surrounding testator at the time of the writing of the will, indicates an intent to vest a fee in his son Frank.

Before discussing the provisions of the will and the various contentions of the parties, it is necessary to bear in mind certain well-recognized rules of construction employed in the interpretation of wills where the language is not clear. The basic principle in the interpretation of wills is the search for testator's intention and that intention must be found from a reading of the whole will: Fletcher v. Hoblitzell, 209 Pa. 337; Williamson's Estate, 302 Pa. 462; Sarver's Estate, 324 Pa. 349. And of course in finding the intent, all the words used by testator must be taken into account and given effect if at all possible: Kirkpatrick's Estate, 280 Pa. 306, 310; March Estate, 357 Pa. 216; Byrne's Estate, supra, 513. The scope of the inquiry is limited to the meaning of what testator said. See Mr. Justice Jones' comprehensive discussion of the

principle in Farmers Trust Co. v. Wilson, 361 Pa. 43, 46, 47.

And in those cases where an ambiguity exists or where the intention of testator is not clearly revealed by the words of the will, the court must consider the circumstances surrounding testator at the time he wrote the will in order to give an intelligent construction to the words actually used: Gilmor's Estate, 154 Pa. 523, 529, 530; McGlathery's Estate, 311 Pa. 351; Jackson's Estate, 337 Pa. 561; Wright Estate, 380 Pa. 106. For a discussion of the subject, see Fiduciary Review, May 1956, page 4.

Since there is a substantial dispute as to the intention of testator as set forth in the words of his will, we permitted parol evidence to be introduced to show the circumstances surrounding testator at the time of writing the will, i.e., conditions of the family, the nature of his bounty, the nature of his property, etc.; this only for the purpose of aiding the court in construing the words of testator. The words employed by testator of course form a gauge of testator's intent: Ludwick's Estate, 269 Pa. 365, 371; Thompson on Wills, 3rd Edition, page 336; Page on Wills, Lifetime Edition, vol. 2, sec. 920, p. 815.

With these principles in mind, we proceed to an examination of the will and the contentions of the parties.

Respondent points to the first line of testator's will where he says: "At the conclusion of my life my property, moveable and unmoveable, shall go over into the name of my son Frank", and argues that if this were the only paragraph in section 14, subparagraph 3 of the will, Frank would be entitled to a fee by reason of Wills Act of April 24, 1947, 20 PS §180.14(3), which provides:

"(3) Devises of real estate. All devises of real estate shall pass the whole estate of the testator in the

premises devised, although there be no words of inheritance or of perpetuity."

We agree with respondent on this point so far as the law is concerned.

The next sentence of the will is as follows: "The house 844 Jackson St., 846-50 Jackson St., together with apartment 139 S. 39th St. and house 1023 Lawrence St. therefrom Frank shall pay my son Samuel four thousand dollars and my daughter Johanna four thousand dollars". By this second sentence respondent contends that apparently testator did not desire to disinherit his other children so he charged against the real estate the sum of $4,000 in favor of Samuel and a like amount in favor of Johanna. The real estate was appraised at $12,000 in 1940 for inheritance tax purposes; the will was written in 1937. Respondent argues that this evinces a purpose on the part of testator to make an equitable distribution of his estate amongst his three children and that he intended his son, Frank, to take a fee.

The argument proceeds that having given Frank a title in fee, all of the words which follow evidences a secondary intent on the part of testator to restrain the alienation of the property and to provide the manner in which the property should descend upon Frank's death, i.e., to take from the holder of the fee the legal incidents, that of the right of alienation and disposal by will. In support of this argument respondent cites the cases of Cross v. Miller, 290 Pa. 213; Billmyer v. Billmyer, 296 Pa. 31; Byrne's Estate, supra, 513.

One of the leading cases on the subject is Byrne's Estate, supra, in which Mr. Justice Drew comprehensively discusses the principles involved. In that case the lower court held that the legatee took absolute ownership of the property involved on the theory that under the 6th item of testatrix's will the legatee was bequeathed the property absolutely. In the 7th item

of the will testatrix provided: " 'Upon the death of my said sister, R. Philomena Byrne, should any part of my estate remain, I give, devise and bequeath the same to my beloved niece, Mrs. J. M. Shadle' ". The lower court was of the opinion that the 7th item of the will did not indicate a clear intent to restrict the estate previously given but at most disclosed " 'merely a secondary or subordinate intent to strip the estate given by the sixth paragraph of one óf its inherent attributes, to wit: the right absolutely to dispose of it' ". The Supreme Court thought otherwise and reversed the decision of the lower court. Said the Supreme Court: "The cases of this character in our reports fall into two groups. On the one hand, we have repeatedly observed that 'an estate devised in fee cannot by subsequent limitations be stripped of its legal incidents' (Fairman's Est., 287 Pa. 334, 336), and we have accordingly held that 'Where words sufficient to vest an absolute interest are used in a will, such interest is not to be cut down by subsequent provisions unless the testator has indicated a clear intent to take away the estate previously given': Cross v. Miller, 290 Pa. 213, 216."

Said the Supreme Court, quoting from Mr. Justice Kephart in Buechley's Estate, 283 Pa. 107, 109: " 'Where there is a gift of an entire estate *by clear and explicit language* (italics supplied), the presumption is that the gift is absolute, and subsequent clauses to reduce it must do so by language which is equally clear and explicit, having the undoubted effect of causing such diminution.' On the other hand, 'we have probably as often held that, in finding the controlling intention, all the words used by the testator should be taken into account, and, if the intent to restrict the gift is clear, it must be given effect': Wettengel's Est., 278 Pa. 571, 573. As we said in Stanton v. Guest, 285 Pa. 460, at page 463, quoting from Good

v. Fichthorn, 144 Pa. 287, 292, 'The true test of the effect of language apparently at variance with other parts of the devise, is whether the intent is to give a smaller estate than the meaning of the words of the gift standing alone would import, or to impose restraints upon the estate given. The former is always lawful and effective, the latter rarely, if ever.' So, where the language of the whole will clearly indicates that a gift to A was in fact intended to be life estate with power of consumption, and remainder over, it will be held to be such, even though the words of gift to A, standing alone, would import absolute ownership. . . . The use of words of restriction after language which in itself would be sufficient to create an absolute estate may of course be evidence—to be considered with other provisions in the will—of an intent to create a less estate. Accordingly, a gift over after the death of the first taker may indicate an intention to vest in the first taker no more than a life estate; and where an examination of the whole will discloses such to be the controlling intention it will of course be given effect."

Finally, Mr. Justice Drew, writing the opinion of the court in Byrne's Estate, supra, summarizes the matter with this language, page 523: ". . . the conflict which appears to exist among the cases, and which is inherent in the problem, is in fact no more than an apparent one. If the intention of the testator is to be given effect, as it must be, courts must be permitted, considering each case separately, to hold ineffective words of restriction and to enforce an absolute estate, where such an estate was intended, or, conversely, to disregard words of absolute gift and to declare the estate created to be a limited estate where a clear intention to that effect appears".

Byrne's Estate, supra, has been cited by our Supreme Court on (a) restraints of alienation, and (b)

the reduction of a fee simple estate to a lesser estate, in a great number of cases among them being Burns Estate, 380 Pa. 623; Stineman v. Stineman, 382 Pa. 153, 158, 160; Burpee Estate, 367 Pa. 329, 334; Johnson Estate, 359 Pa. 645, 649.

The problem then is to decide from a consideration of the entire will whether the controlling intention of testator was to limit the gift to Frank to a smaller estate than the first two sentences in his will standing alone would indicate, or whether it was an attempt on testator's part after giving an absolute estate to take away from it some of its inherent attributes. In examining the will it is to be observed that the language employed in the first two sentences is not clear and explicit. Testator states that his property "shall go over into the name of my son Frank". Respondent argues that even though the language is not as clear and explicit as might be desired, the fact that testator has put a charge of $8,000 on the real estate which had an approximate value of $12,000 at his death, indicates that testator intended to distribute his property equitably among his three children. This argument would have considerable force if it were not for the fact that testator not only gave the real estate to Frank but gave him all other property. The charge or condition was only against the real estate, and it might just as plausibly be argued that testator, having given Frank all the other property, wanted to be certain that his other children would receive something, and thus the charge against the real estate. Nor does the fact that the property was placed in the name of Frank indicate that Frank was to take a fee, for in the nature of things it was necessary that someone be in charge of the property and testator apparently took this means to insure that Frank should have control while he lived.

Testator stated that the property should not be sold

as long as Frank Duld lives, then said in the next sentence, "Should he die childless then it is to revert to brother and sister, if they do not live to their children". This would seem to indicate that Frank was to receive something less than a fee since he did not have the right to sell it. On this point testator's intention is quite clear, namely that if Frank had children they should take. Failing to leave children it is to go to his brother and sister and if they do not live, to their children subject to Frank's wife taking a one-third if she should survive Frank. In this connection respondent argues that strictly speaking, the estate could not revert to the brother and sister for the reason that the estate never came from the brother and sister. Certainly the word "revert" is inaptly used in this connection, but it must be remembered that the writer of this will was unfamiliar with the English language and this will was written in German. Even from the writing in German, it does not reveal a scholarly approach: Conner's Estate, 346 Pa. 271; Ziegler's Estate, 356 Pa. 93. However, the word gives us no trouble for in the context in which it is used testator clearly indicates his intent that the property shall go to his brother and sister in the event of Frank dying childless, subjected of course to the one third interest given to Frank's wife.

The Supreme Court has said in many cases that no two wills are alike and therefore one will rarely governs another; this for the reason that the slightest variation in language or attending circumstances may lead a court to wholly different conclusions with regard to testator's intent and therefore to wholly different results: Byrne's Estate, supra, 523; Stineman v. Stineman, supra, 159. While this is true it is also true that wills which bear a close resemblance to the will in dispute are sometimes helpful in illustrating how relevant principles of law are applied.

An examination of the cited cases will show that they are not apposite to the instant case, for in the cited cases testator in clear and explicit language in the first instance made an absolute gift. Thus, in Billmyer v. Billmyer, supra, 31, the dispositive words to the first taker were: " 'I give, devise and bequeath unto my beloved wife Hannah Billmyer her heirs and assigns forever, all my property, real, personal and mixed of what nature or kind soever, and wheresoever the same shall be at the time of my death'." It was decided in that case that what testator subsequently stated represented a subordinate intent to control a previously given absolute interest and that was beyond his legal power. In short, testator in that case tried to strip the unqualified fee of one of its legal attributes. We have already quoted the words used in Byrne's Estate, supra, 513, and the words used by testatrix in that case were that the first taker received the devise "absolutely".

In Cross v. Miller, supra, 213, the dispositive words used were: " '. . . I bequeath to the following nieces the remainder of my estate to share and share alike' ". . . . This was clearly an absolute gift to the nieces. In a codicil the testratrix indicated who were to take in the event of the death of several of the nieces, using the expression " 'to become her heirs' ". The Supreme Court held that the testatrix there, "without any idea of disturbing the gifts as made in the will, sought to direct or control the inheritance or descent of the title which she was giving in fee". In the instant case testator's gift to Samuel and Johanna and Frank's wife was given directly from testator and not as heirs of the first taker. It was indicative of intent on the part of testator to give Frank something less than a fee. Here in reasonably clear language testator provided for a gift over after the death of the first taker, and this is some indication of an intention to vest in the

first taker something less than a fee: Byrne's Estate, supra, 518; Calder's Estate, supra, 35. Likewise in Robinson's Estate, 282 Pa. 531, the gift to the first taker, the wife, was in clear and unequivocal language, the words used being "'absolutely and in fee simple, investing her with full power to transfer and convey the same or any part thereof'". In the Robinson case as in the Cross v. Miller case, supra, testator in subesequent clauses attempted to make the wife's will the medium of passing certain portions of the remainder estate, and the court in those cases ruled that the first taker took an absolute estate. This, as we have shown, is quite different from what has occurred in this case.

In Calder's Estate, supra, 38, in respect to the question now under consideration, the Supreme Court said: "We do not question the principle relied upon by the appellee that where there is an absolute gift of a thing later words in the same instruments will not operate to reduce the estate thus given, unless it is reasonably certain that such was the intention of the donor. (Lerch's Estate, 309 Pa. 23, 27, 159 A. 868.) In Lerch's Estate and kindred cases the prior gifts were definite and the subsequent language indicated merely a subordinate intent". The kindred cases referred to were Robinson's Estate, Billmyer v. Billymer and Cross v. Miller, which we have hereinbefore analyzed and which, as has been shown, are not apposite to the situation before us.

Respondent argues that if petitioners' interpretation is placed on the will it would bring about an unjust result. They point to the fact that Frank in his lifetime in accordance with the terms of the will, paid his brother and sister a total of $8,000, representing roughly two thirds of the valuation of the real estate, and that if his widow now receives only one third of the real estate, he paid for twice as much as his widow

is now getting. The answer to this argument, of course, is that testator had a right to dispose of his property as he saw fit, and by the same token, to impose such charges and conditions as he saw fit: Houston Estate, 371 Pa. 396.

At first blush it would seem that the conditions imposed by testator were severe; however, the harshness of the conditions is mitigated when it is remembered that in addition to the life interest in the real estate he gave Frank all his personal property. Again, if Frank had left a child, that child would have taken the absolute fee.

Be that as it may, we have no right to conjecture what the undisclosed motives of testator were. It is our duty to construe the will giving effect to all of the provisions, if possible: Conner's Estate, supra, 271; Jacobs' Estate, 343 Pa. 387. The circumstances that surrounded testator at the time of making his will must be considered. We have come to the conclusion after careful consideration of all the provisions of the will, that upon the death of Frank without children, one third of the real estate vested in Frank's widow and the other two thirds vested in Johanna and the children of Samuel, the latter having died prior to Frank.

One more phase of the controversy requires discussion and that is the contention of petitioners that Frank's widow was entitled to only a life interest in one third of the real estate. Petitioner's argument is that the dispositive line "then it (real estate) is to revert to brother and sister, if they do not live to their children", indicates that testator has disposed of all his real estate and that to give Frank's wife a one third interest absolutely in the real estate would mean that testator has given away three thirds plus one third or four thirds. If this were really so, this indeed

would be a mathematical absurdity. But what testator did here in his home-style fashion was to indicate what Frank's wife should receive should she outlive her husband. The sentence which immediately follows the gift to the brother and sister is: "If Frank's wife should outlive him she shall have a right to one third". This to our way of thinking is clear language. What testator was patently doing was disposing of the fee after the death of Frank without leaving children.

The burden of petitioners' argument up to this point consistently was that all of the provisions of the will had to be given effect and that the first two sentences had to be read in connection with what followed. With this reasoning we agree, and likewise the sentence, "If Frank's wife should outlive him she shall have a right to one third", must be given effect. This, too, must be read in connection with the preceding sentence. The words do not limit Frank's wife to a one third interest for life. They give her a right to one third. It is asked, one third of what? The answer is one third of the real estate in the fee. It was the fee that testator was disposing of at this juncture. As heretofore shown, testator provided for a life interest in Frank and after Frank's death he provided for the gift over in the manner indicated. Only under specious reasoning could it be said that he disposed of four thirds. What testator did was to specifically give Frank's widow one third and having given one third specifically, there remained but two thirds and this was given to the brother and sister. The fact that the gift to Frank's wife was in a sentence immediately following the gift to the brother and sister is of little moment. What is of more consequence is that the words giving Frank's wife the one third are reasonably clear. We are not justified in cutting her gift down to a life interest in one third: Shipley's Estate (No. 2), 337 Pa. 580, 584; Clark Estate, 359 Pa. 411, 417, 418.

If, however, we entertained any doubt as to whether Frank's widow was to receive a one third interest for life or a one third interest outright, we would be constrained to interpret the words to mean a one third absolute interest for the reason that as declared by counsel for respondent, it would be "ridiculous and absurd" to impute to testator's words an intention to limit Frank's wife to a life interest in but one third of the real estate. This interpretation would mean that testator had only given Frank and his wife a one third interest for life in the real estate despite the fact that Frank had, realistically speaking, bought and paid for two thirds of the value of the real estate.

Again, in the light of the surrounding circumstances of testator, it is abundantly clear that both Frank and his wife were probably closer to testator than the other children. However, we need not belabor the point. The words themselves are sufficiently clear to indicate that Frank's widow is entitled to a one third of the real estate absolutely in the same manner that petitioners receive the remaining two thirds: Section 14, subparagraph 3 of the Wills Act of April 24, 1947, P. L. 89, 20 PS §180.14(3). . . .

Now, June 19, 1956, the petition in partition requesting that an inquest be awarded and an answer filed thereto having been duly heard, the court now awards an inquest to make partition of the real estate of Mathias Duld, decedent, among the parties in accordance with their respective interests as determined by the court in the body of the opinion. Return of the proceedings to be made to the court on Monday, August 20, 1956.