**Callahan Estate**

*William J. Toy,* for accountants.
*John D. Lucey, Jr.,* for exceptant.
*Ronald Ervais,* contra.

DIGGINS, P. J., October 19, 1972.—The instant matter is before the court for disposition of the exceptions filed on behalf of Sheila Callahan Thompson (nee Sheila Ellen Callahan) to the adjudication of this court, dated January 25, 1972, relative to the above-captioned estate.

The subject decedent, James W. Callahan, died simultaneously with his wife, Agnes J. Callahan, in an aircraft accident on March 24, 1970. The subject decedent and his wife were survived by four daughters, two of whom are now of age. A fifth child, Michael Callahan, died in Vietnam, without having married and without issue on November 8, 1967. The exceptant, Sheila Callahan Thompson is the oldest child. Both she and Maureen Anne Callahan are of age. Deirdre Julia Callahan and Pegeen Veronica Callahan are minors.

By virtue of the issues herein raised, the court deems it necessary to set forth herein the will of decedent, James W. Callahan, in its entirety, same being as follows:

"I, James W. Callahan, being of sound mind, do

hereby devise and bequeath all my property, real and personal, whatsoever, to my beloved wife, Agnes J. Callahan.

"In the event of the deaths of James W. Callahan and Agnes J. Callahan within 90 days of each other, all property, real and personal, shall be devised and bequeathed to our children per stirpes subject to the following provisions:

"1. All life insurance will go in equal shares to our five children, per stirpes.

"2. The property at 455 Kenwood Road, Drexel Hill, Pa. will be devised in trust to our oldest child, Sheila Ellen Callahan, to be maintained as a family home so long as she or any of the other four children wish to reside in it. At the time when none of the children wish to reside in this home, it may be sold and the proceeds divided equally among the five children.

"3. The property at 119 Ramapo Lane, The Dunes, Beach Haven Terrace, N.J. may be sold or rented or retained for the use of the family within the discretion of the executor. If it should be sold, the money realized from its sale shall be placed in trust for use in maintaining 455 Kenwood Road, Drexel Hill, Pa. if this should be necessary. The Executor shall have the discretion to use the Principal as well as the Interest from such sale for such purposes as he deems fit. In the event that the proportionate share derived from the Jas. W. Callahan Co. is not sufficient for any of the children to complete their formal education, the interest or principal realized from the sale of the property at 119 Ramapo Lane should be so applied. It is expected that Sheila Ellen will complete her college education and also graduate school if she so desires. It is anticipated that Deirdre Julia and Pegeen Veronica will complete their secondary educations in Private Schools conducted by the Roman Catholic Nuns, and also college

and graduate school if they so desire. Michael John and Maureen Anne, who have voluntarily discontinued their education, may later decide to complete it, and should be permitted to do so through college and graduate schools if they later so desire. In order to provide for the needs of all, the rule of reason will be applied to what sums should be expended, and this will be within the discretion of the Executor.

"4. The Real Property in Thornton, Texas shall be subject to the same provisions as those set out in Paragraph 3 above.

"5. Our interest in Jas. W. Callahan Co. shall be divided equally among the five children.

"6. In the event that Jas. W. Callahan Co. is continued and it is hoped that it can be, Sheila Ellen Callahan, who has shown the most interest in this business, will work in it in an executive capacity and will have the authority to represent the family's interest in the business. In the event that subsequent to our deaths it becomes necessary to incorporate the business, Sheila Ellen Callahan shall have the right to vote all the family stock. Furthermore, in the event any one of the family members wishes to dispose of his or her interest, he or she must sell it to the other members of the family in equal shares. For the purposes of this will, the net worth of the Jas. W. Callahan Co. is $100,000.00 and hence a 1% share is $1,000.00. In the event the business is discontinued, the amount realized from its sale or liquidation shall be devised and bequeathed equally among the five children. Regarding the continuation of the Jas. W. Callahan Co., this shall be within the discretion of the Executor. It is anticipated that if the business fails to return a profit for the family of approximately $15,000.00 a year, sale or liquidation should be considered. Joseph Quinlan, C.P.A., who has prepared all the company's financial reports,

should be consulted in this matter. The profit referred to is over and above any salary paid to any member of the family employed by the Jas. W. Callahan Co.

"7. In the event of the death of any of the children without issue, his or her interest shall be divided proportionately among those surviving in equal shares.

"8. The expense of the bond required of the Executor who is an out of state citizen shall be borne by the Estate.

"9. William J. Regan, Esquire of 220 East 54th Street, New York, N.Y. shall be appointed Executor of this Estate and the First Pennsylvania Banking and Trust Company, 6th & Chestnut Streets, Philadelphia, Pa. shall be appointed co-Executor.

"10. All other property real and personal will be devised and bequeathed equally among the five children."

The record indicates that the subject estate was called for audit on May 3, 1971. By virtue of the fact that certain issues were presented to the court, a hearing was held on May 25, 1971. It appears that the family-owned business had been incorporated prior to the subject decedent's death. The issues then presented to the court concerned, inter alia, certain matters which are not now pertinent. In addition, the court was advised of a dispute which had arisen concerning the interpretation of decedent's will, same being the subject of the within opinion. It was then hoped that this issue would be resolved amicably.

On August 10, 1971, a further hearing was held involving, inter alia, the question of whether or not the subject will provides for a voting trust of the aforementioned family business. It was further indicated at that time that this matter might be resolved amicably through a family agreement. However, on

September 14, 1971, this court entered an order stating as follows:

"AND NOW, September 14, 1971, it appearing that the Accountant is asserting that the voting trust alleged in the Will is invalid, and, if so, would require a particular distribution of the stock. This position is challenged by a daughter, represented by Edward C. German.

"Efforts have been made to settle by negotiation which, as of now, have not materialized. In order to determine the issue it is ORDERED that the matter be listed for hearing on the 5th day of October, 1971, at 2:00 p.m., at which time any party in interest may appear and be heard.

"Since there is a disagreement as to whether or not testimony is necessary, it is provided that anyone in interest wishing to present testimony may do so on the date specified. Following the taking of testimony the Court will set a time for filing of respective briefs if such are necessary or required by the Court."

Pursuant to the aforesaid order, a further hearing was held on October 5, 1971. No testimony was received by the court; rather, counsel for certain of the parties presented their positions. It is noted that exceptant, Sheila Callahan Thompson, was not present at the said hearing, personnally or by counsel. At the said hearing, exceptant did not present any formal position of record. Further, the court was advised that although exceptant had previously raised an objection to the absolute distribution of the stock of the family business, without restriction, agreement had been recently achieved subject to the statements of counsel made at the hearing. Moreover, at the said hearing, the court received the impression that the present exceptant concurred with the requests made

by counsel for the remaining parties in interest. Nevertheless, in the adjudication filed on January 25, 1972, this court considered and treated, in summary form, the issue herein raised. In this regard, the court stated, in its adjudication, as follows:

"An analysis of the subject will, the facts and circumstances here present, and analogous legal authority, leads this Court to the conclusion that the bequest made by the decedent in Paragraph 5 was absolute. In addition, the Court is of the further opinion that the provisions of Paragraph 6, hereinabove quoted, are precatory in nature and not mandatory. Accordingly, the Court concludes that no voting trust is here present and that the subject stock must be awarded to the parties in interest, absolutely."

By way of further background, counsel for respondents has advised the court that exceptant, Sheila Callahan Thompson has drawn, from the family business, a salary of $20,000, enjoys the exclusive use of a company-owned Cadillac automobile, and receives other benefits and expenses from the said company. Counsel also states to the court that the exceptant had not worked for the family business for a least one year prior to the death of the subject testator, and was employed by the alleged Board of Directors (composed of two directors) of which the exceptant claims to be one. Counsel for respondents also contends that the minor daughters of decedent, Deirdre Julia Callahan and Pegeen Veronica Callahan, have been subsisting, primarily, on Social Security payments as their only source of income. Although the court has taken note of these alleged circumstances, no formal testimony has been presented in these regards. Even assuming that this had been done, it is questionable that these circumstances would be relevant in the context of the issue here presented for determination. Therefore, the

court is of the opinion that the said circumstances, at this juncture, cannot be considered.

The issues presented to the court for determination are as follows:

1. Was the bequest made by the decedent in Paragraph 5 of his will absolute or, alternatively, do the provisions of Paragraph 6 thereof establish a trust?

2. *If* a trust was established by Paragraph 6, was the trust a voting trust or a general trust?

The court concludes that the bequest made by decedent in Paragraph 5 is absolute. In addition, the court is of the further opinion that the provisions of Paragraph 6 are precatory in nature and not mandatory; hence, no trust was established.

Paragraph 5 of decedent's will, provides as follows:

"Our interest in Jas. W. Callahan Co. shall be divided equally among the five children."

An analysis of decedent's entire will indicates that testator intended to give absolute title to the family business, in equal shares, to his surviving children. This was the dominant intent of testator as derived from the four corners of the instrument. Paragraph 6 of decedent's will, as aforesaid, is precatory in nature. Paragraph 6 may be characterized as a suggestion or wish, falling short of binding and compulsory direction, the provisions thereof expressing a desire or expectation. The law is well established that even words of command have been regarded as precatory where the gift is absolute. See, inter alia, Brubaker v. Lauver, 322 Pa. 461. Stated in the converse, precatory words will not defeat a prior absolute devise or bequest or impress the gift with a trust. See, inter alia, Murphy's Estate, 184 Pa. 310. Moreover, as aforesaid, the bequest set forth in Paragraph 5 is absolute; the subsequent and inconsistent language of Paragraph 6, which purports to reduce, minimize or restrict the

benefits of ownership to all children, except Sheila, must be stricken down as subordinate to the paramount intent of testator as expressed in Paragraph 5 of his will. See Robinson's Estate, 282 Pa. 531, and Pattin v. Scott, 270 Pa. 49. In addition, an analysis of the subject will indicates that Maureen, Deirdre and Pegeen were to enjoy the full benefits of ownership of the family business (absolutely); a contrary construction would indeed frustrate this intention and permit Sheila to secure, potentially, disproportionate benefits at the expense of the other children: cf. Hays v. Viehmeier, 265 Pa. 268.

Continued analysis of decedent's will further corroborates the conclusion hereinabove achieved. Paragraph 2 of decedent's will specifically devises, in trust, certain property to Sheila, the oldest child, in clear terms, with a definitive object as well as a time of termination. Thus, it is patent that decedent was fully cognizant of the method and manner by which a trust could be established. He failed to utilize trust language in Paragraph 6 of his will. Further, in paragraph 3 of his will, decedent again employed trust language relative to other realty. Of a special significance is the following language contained in Paragraph 3 of decedent's will:

"In the event that the proportionate share derived from the Jas. W. Callahan Co. is not sufficient for any of the children to complete their formal education, the interest or principal realized from the sale of the property at 119 Ramapo Lane should be so applied."

The above-quoted language, in the opinion of the court, supports the conclusion that the bequest of the family business was absolute in nature.

For all of the above reasons, it is the conclusion of this court that the provisions of Paragraph 5 of decedent's will constituted an absolute bequest, and that

the provisions of Paragraph 6 are precatory in nature and/or are inconsistent with the absolute bequest.

With regard to the second issue presented for determination, prior to the date of the last hearing, counsel, in essence, directed their attention to the question of whether a voting trust was established by the provisions of Paragraph 6, assuming arguendo, that a trust was in fact created. In its adjudication of January 25, 1972, this court concluded that no voting trust was created in light of its conclusion that the bequest made by decedent in Paragraph 5 was absolute. *All* parties, including the exceptant, now agree that the provisions of Paragraph 6 do not establish a voting trust. Apposite statutory and case authority would unquestionably void such a trust if, arguendo, the provisions of Paragraph 6 were to be so construed.

It is the present contention of counsel for exceptant, Sheila Callahan Thompson, that the provisions of Paragraph 6 are precatory and/or inconsistent with the absolute bequest set forth in Paragraph 5. Nevertheless, and without regard to these conclusions, the court is of the opinion that Paragraph 6 does not constitute an ordinary trust. If any trust was intended by decedent in Paragraph 6, then it appears clear to this court that same is a voting trust. As aforesaid, all counsel now agree that such is not the case; further, if such were the case, then it would be legally invalid. Moreover, an analysis of Paragraph 6 of decedent's will discloses the following:

1. That there is an expression of a hope or a desire combined with the advice of decedent;

2. Paragraph 6 commences with the words: "In the event that Jas. W. Callahan Co. is continued, and it is hoped that it can be . . ." this supports the conclusion

that the language of Paragraph 6 is precatory in nature;

3. Testator failed to name a trustee; he, in fact, did name a trustee in Paragraph 2 of his will relative to certain realty which he devised in trust;

4. Testator failed to impose specific enforceable duties upon a named trustee;

5. Testator failed to vest title of the family business in anyone; and

6. Testator failed to define the time of termination, stating that same shall be within the discretion of the *executor*, with the further advice that liquidation should be "considered" in the event that the profits returned failed to yield $15,000 a year, further advising that a named accountant should be consulted in this matter.

Counsel for exceptant contends that decedent intended that exceptant was impliedly named by decedent as the trustee. An acceptance of this contention would lead to the conclusion that a voting trust is established; as above mentioned, such a trust would be invalid. Moreover, counsel for exceptant contends that a trust was created by imposing on the "indicated" trustee the powers of a trustee, even though the word "trustee" is not used, citing Sheets' Estate, 52 Pa. 257. In fact, the court has no quarrel with the holding in Sheets' Estate; however, the law is equally well established that in determining whether an instrument creates a trust, the presence of the words "in trust," even though not always controlling, are entitled to great consideration. See Lehigh University v. Hower, 159 Pa. Superior Ct. 84. Here, in Paragraph 6, testator failed to use the said words even though he did, in fact, utilize same in Paragraph 2 of his will.

This deficiency is also entitled to appropriate consideration.

For all of the above reasons, the court is of the opinion that decedent did not establish, by Paragraph 6 of his will, a voting trust or an ordinary trust.

Counsel for exceptant also contends that the provisions of Paragraph 6 of decedent's will relating to the employment of his daughter, the exceptant, are mandatory. In light of the conclusions hereinabove achieved, this issue is moot. Moreover, the cases cited by counsel in this regard, viz: Rose Estate, 49 D. & C. 2d 322, Hand's Estate, 315 Pa. 238, and Thompson's Estate, 304 Pa. 349, are legally and factually distinguishable from the instant case.

Lastly, counsel for the exceptant contends that the court did not consider the "family agreement." No argument was presented by counsel relative to this contention. Counsel for the remaining parties indicate that the family agreement never became operable by virtue of the fact that the exceptant failed to place funds in escrow as required by the terms of the said agreement. It appears clear that this "agreement" is not presently before the court and, therefore, is irrelevant hereto.

Accordingly, the court enters the following

### DECREE

And now, to wit, this October 19, 1972, upon consideration of the exceptions of Sheila Callahan Thompson, nee Sheila Ellen Callahan, to adjudication of the court dated January 25, 1972, filed in this cause, and upon consideration of the record, and after hearing, it is ordered, adjudged, and decreed that the said exceptions be and the same are herewith dismissed.