## Selig Estate

*Marvin L. Wilenzik,* for appellant.
*Lawrence F. Flick* and *Calvin S. Drayer, Jr.,* for appellee.

TAXIS, *P. J.,* December 26, 1974—Edythe F. Selig died testate on September 4, 1971, a resident

of Montgomery County. Her will, dated July 30, 1971, named her husband, Milton E. Selig, as executor and in paragraph first she made the following bequest:

*"First:* I give, devise and bequeath to my husband, Milton E. Selig, all of my worldly goods with the request that he make gifts therefrom as follows:

"$25,000.00 to Marilyn and Joseph Finkel.

"$ 5,000.00 to Florence and Leon Ruder.

"$ 5,000.00 to Deborah and Allen Cantor.

"$ 1,000.00 to Edith Finkel.

*"Second:* I appoint my husband, Milton E. Selig, as executor of my estate."

Neither the briefs nor the record disclose the approximate size of decedent's probate estate.

Milton E. Selig, the named executor, has never presented the will for probate nor petitioned for grant of letters testamentary. Joseph Finkel, a brother of decedent and named in the will in connection with a $25,000 gift, petitioned the register of wills to direct Milton E. Selig to show cause why he should not qualify as executor or, failing that, why letters of administration c.t.a. should not be granted to Joseph Finkel.

This petition was met by a preliminary objection filed by Milton E. Selig raising the question of whether Joseph Finkel has a standing as a party in interest to petition for production and probate of the will on the ground that the bequest to Mr. Finkel is precatory and, therefore, Mr. Finkel has no interest in this estate.

After hearing and argument before the register, the register concluded as follows:

"The Register is further of the opinion that Joseph Finkel, as a party named in the Will, has a

sufficient interest to require probate of the document for the additional reason that even though the words may eventually be construed as precatory, Joseph Finkel, nevertheless, is entitled to obtain this determination by the Orphans' Court which necessarily initially requires probate of the document. It would further appear that if the phraseology is construed as being precatory, Joseph Finkel still has a right to probate as a party having a potential or possible interest for the purpose of having Milton E. Selig elect and choose whether he proposes to fulfill his wife's requested gift. In other words, Joseph Finkel as a possible beneficiary, is entitled to the document's probate for the purpose of having Milton E. Selig choose, if in fact the bequest is precatory, whether he may or may not wish to comply with the testatrix's request.

"III. ORDER—AND NOW, this 10th day of October, A.D. 1972, the Preliminary Objections filed by Milton E. Selig are dismissed. Unless cause be shown by him within twenty (20) days from receipt of this Opinion and Order why he should not probate the aforesaid Will and qualify as executor or, failing that, why letters of administration c.t.a. should not be granted to the petitioner, Joseph Finkel, such letters of administration c.t.a. will, upon proper qualification, be so granted to the petitioner."

After entry of this order by the register of wills, Milton E. Selig filed an appeal from this ruling and Mr. Finkel filed preliminary objections claiming that Mr. Selig was not the person entitled to an appeal from the register's order. At argument it was decided by counsel for the parties that the court should proceed to determine whether or not Joseph

Finkel and the other named beneficiaries were entitled to receive the gifts under Mrs. Selig's will. The question now is whether Mrs. Selig's will creates valid gifts in the amounts specified to Mr. Finkel and the other named beneficiaries under Item First of the will.

Reduced to its simplest form, the key language in decedent's will is as follows:

"I give . . . my husband . . . all of my worldly goods *with the request that he make gifts therefrom* as follows. . . . I appoint my husband . . . executor of my estate."

There is no formula for bringing to a direct test the question whether words of *request* are or are not to be construed as obligatory: Stinson's Est., 232 Pa. 218, 221, 81 Atl. 207 (1911). The test is whether the words ("with the request that he make gifts therefrom") were used in a mandatory sense, though couched in a mild, polite, courteous command, or were used only as a suggestion or wish falling short of binding and compulsory directions: Shober Est., 67 D. & C. 251, 262 (1949).

In Shober Estate, supra, the language in question was, "I request said . . . [legatee] to pay to my cousin . . . fifty dollars ($50.00) a month as long as she is working and ($100.00) one hundred a month when she is unable to work." The court interpreted this language as mandatory after putting itself in the armchair of the testator and weighing all attending circumstances: *id.* at 263.

In Colton v. Colton, 127 U.S. 300, at 319, 8 S. Ct. 1164 (1887), the Supreme Court of the United States expounded Pennsylvania law as follows:

"*It is an error to suppose that the word 'request' necessarily imports an option to refuse, and*

*excludes the idea of obedience as corresponding duty.* If a testator requests his executor to pay a given sum to a particular person, the legacy would be complete and recoverable. According to its context and manifest use, an expression of desire or wish will often be equivalent to a positive direction, where that is the evident purpose and meaning of the testator; as where a testator *desired* that all of his just debts, and those of a firm for which he was not liable, should be paid as soon as convenient after his decease, it was construed to operate as a legacy in favor of the creditors of the latter. Burt v. Herron, 66 Penn St. (16 P.S. Smith), 400." (Emphasis added.)

It is the opinion of the court that the words used by decedent were couched in a mild, polite and courteous command and were used in a mandatory sense. Even without considering any attending circumstances, the position of the words indicates that the words are to be construed in a mandatory sense. Decedent did not make an absolute gift to her husband and then request that he independently use his discretion to make gifts to the persons named. Rather, in a single sentence, she gave her husband her worldly goods, not absolutely, but *with* the request that he make specific gifts *therefrom,* that is, from *her* worldly goods, from *her* estate. This language the court considers mandatory. Cf. Smith Est., 35 Northamp. 257, 73 York 123 (1959).

Even the word "wish" may be mandatory when expressive of the intent of the testator, to be carried out without the intervention of another's will; and when such a word is used *in direct reference to the estate,* it is prima facie testamentary and imperative, and not precatory: Calder's Est., 343 Pa. 30, 21

A. 2d 907 (1941). The gifts listed by Mrs. Selig were to be paid out of *her* worldly goods. The words used were in direct reference to *her* estate and were, therefore, testamentary and imperative, and not precatory. Cf. Smith Est., supra.

In Burt v. Herron, 66 Pa. 400 (1870), our Supreme Court stated that a request that a person have a thousand dollars *out of decedent's estate,* or that it should be paid *by decedent's executor,* would be an effective legacy. Mrs. Selig's request complies, in fact, with both of these requirements. The payments are to be made to the persons named, from all of Mrs. Selig's worldly goods, that is, from her estate; and the payments are to be made by her husband, who is also her executor.

Counsel for Mr. Selig makes the distinction that the gift to Mr. Selig under Item First of the will is a gift to him individually, rather than as executor. This is not an appropriate distinction since, and this the court deems important, Mr. Selig was the attorney-scrivener of the will. *In this circumstance,* it would be incongruous to require Mrs. Selig to make the distinction that a request of her husband individually is precatory and a request of her husband as executor is mandatory.

Counsel for Mr. Selig has also strongly argued that decedent made an absolute gift, and the later words should not operate to reduce the estate thus given. However, the later language *is not repugnant* to what has gone before. Cf. Calder's Est., supra, at 38. Moreover, the language of the gift to Mr. Selig is not the classic language of an absolute gift, such as "absolutely," or "to have and to hold forever," or "his heirs and assigns forever." See Calder's Estate, supra, at 38, fn. 2. The absence of such classic language is particularly significant in

the case at bar by reason of the circumstance that Mr. Selig is the *attorney-scrivener-beneficiary-executor* of the will.

For the foregoing reasons, and after careful consideration of the record and of the briefs and argument of counsel, the court is of the opinion that the language of decedent's will is mandatory. Accordingly, Milton E. Selig is directed to pay legacies as follows:

$25,000 to Marilyn and Joseph Finkel.
$ 5,000 to Florence and Leon Ruder.
$ 5,000 to Deborah and Allen Cantor.
$ 1,000 to Edith Finkel.

This order shall become final as of course ten days from the date hereof unless exceptions are filed thereto.

## OPINION ON EXCEPTIONS

TAXIS, *P. J.,* April 22, 1975—This matter is now before the court by way of ten exceptions to the court's opinion and order of December 26, 1974.

The main complaint set out in exceptant's brief and also his oral argument is that Colton v. Colton, 127 U. S. 300, 8 S. Ct. 1164 (1887), referred to in the court's opinion, is distinguishable and inapposite, has a narrow and limited application, and should be disregarded. A rereading of the court's opinion discloses, however, that the court did not find the Colton case *controlling.* Rather, the court quoted a statement of the law of Pennsylvania as expounded by no less an authority than the United States Supreme Court. Accordingly, exception no. 1 is dismissed.

Exceptant argues that the omission from a will of words of inheritance does not indicate a lack of

intent to give an absolute interest, and exceptant cites four cases in support of this argument: Kidd's Est., 293 Pa. 21, 141 Atl. 644 (1928); Robinson's Est., 282 Pa. 531, 128 Atl. 437 (1925); Boyle v. Boyle, 152 Pa. 108, 25 Atl. 494 (1893); Cross v. Miller, 290 Pa. 213, 138 Atl. 822 (1927). This very argument was made in Calder's Estate, 343 Pa. 30, 21 A. 2d 907 (1941), which, of course, postdated the four cases relied upon by exceptant. In fact, with regard to this very same argument, two of the cases relied upon by exceptant were distinguished by the Supreme Court in Calder's Estate. In Calder's Estate, the Supreme Court rejected this argument as follows:

"We do not question the principle relied upon by the appellee that where there is an absolute gift of a thing later words in the same instrument will not operate to reduce the estate thus given, unless it is reasonably certain that such was the intention of the donor: Lerch's Estate, 309 Pa. 23, 27, 159 A. 868. In Lerch's Estate, and kindred cases the prior gifts were definite[2] and the subsequent language indicated merely a subordinate intent. Here the testatrix used ambiguous language in giving the prior estate, which language she subsequently interpreted. *The language which follows is not repugnant to but explanatory of what has gone before . . .*": *Id.* at 38.

Footnote 2 of the Supreme Court's opinion in Calder's Estate, supra, at 38, is as follows:

"[2] The words held to give an absolute estate were, in Lerch's Estate, supra, 309 Pa. at page 26, 159 A. at page 869, 'he to have and to hold the same absolute and forever.'; in Robinson's Estate, 282 Pa. 531, 532, 128 A. 437, 438, 'all of my estate . . .

absolutely and in fee simple'; in Billmyer v. Billmyer, 296 Pa. 31, 33, 145 A. 674, 675, 'unto my beloved wife . . . her heirs and assigns forever'; and in Cross v. Miller, supra, 290 Pa. at page 215, 138 A. at page 823, 'I bequeath to the following nieces the remainder of my estate to share and share alike'."

This court in its opinion made reference to the absence in Mrs. Selig's will of the classic language of an absolute gift, such as "absolutely," or "to have and to hold forever," or "his heirs and assigns forever." The court found the absence of such language particularly significant in the case at bar by reason of the circumstance that Mr. Selig is the *attorney-scrivener-beneficiary-executor* of the will. In this regard, the court was guided by Calder's Estate, supra. If Mrs. Selig's will had simply provided a gift to her husband *absolutely,* with the request that her husband make gifts therefrom, then the request would be precatory, for to construe the request as mandatory would render the request language repugnant to the *absolute* gift language which preceded it. But, as indicated in Calder's Estate, supra, there is nothing repugnant in Mrs. Selig's making a gift to her husband of all of her worldly goods, *not absolutely,* but with the direction, couched in polite language, that he make gifts of $36,000 therefrom to designated persons. There being no repugnancy in such a construction, the cases cited by exceptant are not controlling: Calder's Estate, supra.

## FINAL DECREE

After careful consideration of the record and the briefs and arguments of counsel, the court concludes that all exceptions are without merit and the same are herewith dismissed.